GUARANTY STATE BANK & TRUST COMPANY ET AL. v.
H. Y. LIVELY ET AL.

No. 2470. Decided May 9, 1917.

**1.—Banking—Check Payable to Fictitious Person.**

A check payable to a fictitious person drawn by one who is ignorant of that fact is not, for that reason, payable to bearer. The bank which cashes it on an indorsement of the name of the fictitious payee by another, and by its indorsement guarantees the genuineness of such fictitious indorsement, is liable to the bank on which it is drawn and which pays it on the faith of such guaranty; but neither has recourse against the drawer of the check. The latter can recover the amount wrongly charged against his deposit by the bank on which it was drawn, and which paid it on the feigned indorsement of the payee. (Pp. 397, 398.)

**2.—Same—Charge—Estoppel—Case Stated.**

Plaintiff, having a deposit in a bank, was induced by a swindler to draw his check thereon in favor of a fictitious payee, as a loan on the faith of pretended collateral securities in the name of and bearing the purported indorsement of such fictitious person. Though plaintiff may have intended that the bank should pay his check on the same indorsement appearing on his securities, and the check was in fact so indorsed by the swindler, this did not estop plaintiff as against the bank cashing or paying the check. Such bank, having no knowledge of such intent and being in no way misled by it, was not thereby prevented from discharging its obligation to identify the payee and determine the genuineness of his signature. A charge presenting such estoppel as a defense was properly refused. (Pp. 395-399.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

Lively sued the Exchange National Bank, and the latter impleaded and asserted a cross-action against the State Bank & Trust Company and McFarland. Lively recovered judgment and the Exchange National Bank had judgment on its cross-action against the State Bank & Trust Company and McFarland. Both the banks and McFarland appealed. The judgment was affirmed, and the State Bank & Trust Company and McFarland obtained writ of error.

*Leake, Henry & Robinson,* for plaintiffs in error.—When a depositor in a bank who is the victim of a fraud unknown to the bank gives his check payable to the order of a third person, who is merely fictitious, and delivers the check to a purported agent of such third person with whom the depositor has had all of his dealings, in exchange for bogus land securities bearing the forged endorsement of such third person, and the check is cashed by virtue of the same forged endorsement which appeared upon the land securities accepted by the depositor, the depositor must stand the loss incurred from the cashing of the said check and can not recoup his loss from the person cashing the said check on the said endorsement in the due course of business. Kelley v. Planters, etc., Bank, 135 S. W., 1142; Land Title & Trust Co. v. Northwestern Bank, 196 Pa. St., 230, 46 Atl., 420; Kohn v. Watkins, 26 Kan., 691, 40 Am. Rep., 340; Lane v. Kroekle, 22 Iowa, 399; Levy v. Bank of America, 13 Am. Rep., 124; United States v. National Exch. Bank, 45 Fed., 163; 5 Am. & Eng. Ency. of Law, 1067.

The actual intention of the drawer of a check should control, and if a check is cashed in accordance with the actual intention of the drawer at the time same was drawn, he can not recover from a bank cashing the same, even though the endorsement upon which it was cashed was in fact forged. Same authorities.

*J. L. Goggans* and *D. A. Eldridge,* for defendant in error.—The bank should not have paid the check drawn upon it, save to the actual payee or to his order, and if the court erred, it was in favor of appellants, and they, therefore, can not complain, because it imposed upon them the duty only to use ordinary care to ascertain the identity of the payee. 2 Daniel on Neg. Inst., sec. 1618 (4th ed.); Graves v. Am. Ex. Bank, 17 N. Y., 205; O'Neil v. New England Trust Co. (R. I.), 67 Atl., 63.

The liability of the banker for paying a check upon a forged endorsement can not be affected by conduct of the customer in drawing the check of which the banker had no notice. Armstrong v. National Bank, 46 Ohio St., 512, 15 Am. St., 655.

The fact that the drawer of a check, acting in good faith, makes it payable to a certain person or order, supposing that there is such a person, when in fact there is not, does not excuse the bank for paying the check to a fraudulent holder upon any less precaution than if it

had been made payable to a real person. Bank v. Peyton & Co., 15 Texas Civ. App., 184; Tiedeman on Com. Paper, sec. 451, and note; Armstrong v. Bank, 15 Am. St., 655; Graves v. Am. Exch. Bank, 17 N. Y., 205.

The rule invoked by the defendants that a check payable to a fictitious person is payable to bearer is wholly inapplicable, because such rule extends only to checks made payable to persons known by the drawer at the time to be fictitious. Shipman v. Bank, 126 N. Y., 318, 22 Am. St., 821; Boles v. Harding (Mass.), 87 N. E., 481; Chism v. First Natl. Bank (Tenn.), 36 S. W., 387; Armstrong v. Pomeroy Natl. Bank (Ohio), 22 N. E., 866; Jordan Marsh Co. v. Natl. Shawmut Bank (Mass.), 87 N. E., 740; Harmon v. Old Detroit Natl. Bank (Mich.), 116 N. W., 617.

MR. JUSTICE YANTIS delivered the opinion of the court.

This suit was instituted in the District Court of Dallas County, Texas, by H. Y. Lively against the American Exchange National Bank of Dallas.

Lively, who is defendant in error here, and who was plaintiff in the District Court, alleged that on or about October 20, 1909, he was a depositor in the American Exchange National Bank of Dallas, having on deposit more than fifteen hundred dollars; that on or about the 10th day of December he demanded of the State Bank & Trust Company that it repay to him the sum of fifteen hundred dollars which it had without authority charged against his account upon a check which he had executed payable to the order of E. Crawford for said amount, which said bank had paid without authority in that the said E. Crawford, the payee in the check, had never endorsed the same or authorized anyone to endorse the same for him, and that said bank had not paid out the said sum of fifteen hundred dollars as directed by him by his said check, and it had no right to debit his account with said money so wrongfully paid out, but it was its duty, as it had agreed when he made the deposit, to pay him said sum of money in such sums as plaintiff might direct from time to time, and that he had made demand for it to pay him said fifteen hundred dollars, which it had refused to do.

The Exchange National Bank answered with a general demurrer, a general denial and with a special answer to the effect that it had not paid the said Crawford check of fifteen hundred dollars to Crawford, but said check was paid by it to the Guaranty State Bank & Trust Company, and charged by it to the account of said Lively, and that when the Crawford check was paid by it to the Guaranty State Bank & Trust Company the latter and one S. J. McFarland had endorsed the check and guaranteed to the Exchange National Bank the validity of all prior endorsements, and that if judgment should be rendered against it in favor of said Lively that it should be awarded a judgment against the said Guaranty State Bank & Trust Company and S. J.

McFarland for a like amount. It caused said parties to be served with citation and to answer its cross-bill against them.

The Guaranty State Bank & Trust Company and S. J. McFarland appeared and answered by special exceptions, a general demurrer, a general denial, and a special answer, which was to the effect that the said check payable to E. Crawford and executed by said Lively was procured from said Lively's agent by one Joseph Weil, who represented himself to be the agent of E. Crawford, who was the payee in the check; that the said Joseph Weil claimed to be representing E. Crawford, and secured the check payable to E. Crawford by certain false and fraudulent representations; that in fact E. Crawford was a fictitious person, and did not exist; that the said Lively failed to make any inquiry or investigation to ascertain whether said Weil was in fact the agent of E. Crawford, or whether said Crawford had an actual existence; and that the said Lively, by reason of his negligence in failing to ascertain that E. Crawford was a fictitious person, and that the statements Weil had made were false and fraudulent, is estopped to complain of the cashing of said check by other persons in good faith on the endorsement of the said E. Crawford made on said check by the said Joseph Weil.

The case was tried by a jury in the District Court of Dallas County. A verdict was rendered in favor of said Lively for the sum of fifteen hundred dollars, with six per cent interest thereon, and in favor of the American Exchange National Bank of Dallas against the Guaranty State Bank & Trust Company and S. J. McFarland for a like amount.

The court charged the jury that if they believed from the evidence that said Lively was negligent in issuing said check, and that said negligence was the proximate cause of the loss of the money in controversy, to find for the defendants; that if they believed from the evidence that the defendants were also guilty of negligence in the payment of said check to return a verdict for the defendants; that if they failed to find that either party was guilty of negligence in the transaction to return a verdict for the defendants; that if they found that both parties were guilty of negligence but should find that the negligence of the defendants was the proximate cause of the loss of the money, then to return a verdict for the plaintiff, Lively; that if they should find that both parties were guilty of negligence but that the negligence of the plaintiff was the proximate cause of the loss of the money, then to find a verdict for the defendants.

Necessarily the verdict of the jury implies a finding in favor of said Lively, the plaintiff in the District Court, against the defendants, on the question of negligence and its proximate result.

The American Exchange National Bank appealed from the judgment of the District Court, but did not apply to this court for a writ of error. Appeal was also taken to the Court of Civil Appeals by the Guaranty State Bank & Trust Company and S. J. McFarland. The case was decided by the Fourth Court of Civil Appeals, where the judgment of

the District Court was affirmed.   149 S. W., 211.   A writ of error was granted by this court on the petition of the plaintiffs in error.

The identical questions presented have not previously been before this court; and we have given careful consideration to the able arguments of counsel, and have made a careful examination of the authorities to which we have been referred, and we have reached the conclusion that the trial court did not err in refusing to give the plaintiff in error's second special requested charge, which was to the effect that if the jury should believe that it was the intention of H. F. Lively when he drew the check in question that it should be paid when the same had been endorsed with the same signature of E. Crawford which appeared on the land notes transferred to H. Y. Lively in the deal between H. F. Lively and Joseph Weil, and that said check had in fact been endorsed by the same signature, to return a verdict for the defendants, the Guaranty State Bank & Trust Company and S. J. McFarland.

The undisputed evidence shows that E. Crawford had no real existence, but that Lively made the check in question payable to him believing that he was a real person, which he was represented to be by Joseph Weil, who it appears by the undisputed evidence was a swindler in this transaction, and the evidence indicates that it finally became known that he had engaged in many such swindling schemes.   Lively, who gave the check, testified that he did not intend it to be paid to anybody except to E. Crawford in person, or upon his endorsement.

Joseph Weil secured the check in this manner:   He represented to H. F. Lively, who was the agent of the plaintiff in error, that one E. Crawford was a cotton buyer, and lived in Dallas; that he was representing Crawford for the purpose of securing a loan in Crawford's behalf.   He presented a note signed by Crawford for fifteen hundred dollars, and offered as collateral security three vendor's lien notes, with an abstract of title.   Lively examined the abstract, which showed to be good, accepted the Crawford note for fifteen hundred dollars, and the three vendor's lien notes as collateral security, and gave the check in question payable to E. Crawford and delivered it to Weil.   Weil did not take it to the Exchange National Bank, but took it to the Guaranty State Bank & Trust Company, and there represented that E. Crawford was a cotton buyer, living in Dallas, and placed the check in said bank to the credit of said E. Crawford.   Soon afterwards he secured the money from the Guaranty State Bank & Trust Company on the checks of E. Crawford.   Said checks, of course, were signed by himself, and not by E. Crawford, as was the endorsement on the check which was given by Lively.   The note and the three collateral notes which Weil gave to Lively were not signed by any person named "E. Crawford," but the name of "E. Crawford" was in fact signed by said Joseph Weil.   None of these facts were known either to Lively or to either of the banks at the time of the transaction.

We think that if it was the intention of Lively when he gave the

check payable to E. Crawford for the American Exchange National Bank to pay it when it had been endorsed by the same signature as was upon the note signed "Crawford" and the collateral notes signed "Crawford," but which intention was denied by Lively, still this intention could not act as an estoppel against Lively and in favor of the Guaranty State Bank & Trust Company and McFarland unless it had misled them and induced them to part with their money in its payment to the wrong person. It did not so mislead them, because there is no evidence that they had any knowledge of the existence of such intention on the part of Lively. There is no evidence in the record showing that the bank which paid the check was in any manner influenced by such intention, or that it had any kind of knowledge of such intention on the part of Lively. Neither is there any evidence that the bank which paid the check used any diligence or did anything to ascertain if the endorsement on the check was Crawford's real endorsement, or to ascertain if Crawford had a real existence except to rely upon the statement made to it by Joseph Weil.

A check made payable to a 'fictitious person with the knowledge of the maker is payable to bearer, and a bank which paid the check would be protected in its payment to anyone presenting it. But a check which is made payable to a fictitious person without the knowledge of the maker is not payable to bearer, and it is the duty of the bank before paying it to ascertain the existence and the identity of the payee, and failing to do so, to refuse its payment.

The case of Armstrong v. National Bank, by the Supreme Court of Ohio, 46 Ohio St. Rep., 512, 6 L. R. A., 625, 15 Am. St., 655, 22 N. E., 866, involves facts almost identical with the facts involved in this case. In discussing the question of the bank's liability in paying the check, that court, speaking through Mr. Chief Justice Minshall, said:

"If the drawer of a check, acting in good faith, makes it payable to a certain person or order, supposing there is such person, when in fact there is none, no good reason can be perceived why the banker should be excused if he pay the check to a fraudulent holder upon any less precautions than if it had been made payable to a real person; in other words, why he should not be required to use the same precautions in the one case as in the other; that is, determine whether the endorsement is a genuine one or not. The fact that the payee is a nonexisting person does not increase the liability of the bank to be deceived by the endorsement. The fact is that an ordinarily prudent banker would be less liable to be deceived into a mistaken payment by a fictitious endorsement such as this was, than by a simple forgery. The determination of the character of any endorsement involves the ascertainment of two things: (1) The identity of the endorser, and (2) the genuineness of his signature; and no careful banker would pay upon the faith of the genuineness of any name until he had fully satisfied himself both as to the identity of the person and the genuineness of his signature. Now, a careful banker may be deceived as to the signature of

a person with whose identity he may be familiar; but he is less liable to be deceived where both the signature and the person whose signature it purports to be, are unknown to him. In making the inquiry required in such case to warrant him in acting, he will either learn that there is no such person, or that no credible information can be obtained as to his existence, which, with an ordinarily prudent banker, would be the same as actual knowledge that there is no such person, and he would withhold payment, as he would have the right to do in such case. But still, if he should be deceived as to the existence of the person, he would, nevertheless, require to be satisfied as to the genuineness of the signature. Of this, however, he could not be through his skill in such matters, and on which bankers ordinarily rely, for he would be without any standard of comparison, and he could have no knowledge of the handwriting of the supposed person, for there is no such person. So that, if he acts at all, it must be upon the confidence he may place in the knowledge of some other person, and if he choose to act upon this, and make, instead of withholding, payment, he acts at his peril and must sustain whatever loss may ensue."

To the same effect is the holding of the Court of Appeals of the State of New York in the case of William D. Shipman et al. v. The Bank of the State of New York, 126 N. Y. (Court of Appeals), 318, 12 L. R. A., 791, 22 Am. St., 821, 27 N. E., 371. There are numerous authorities to the same effect.

We believe that upon reason and principle the doctrine announced in this line of cases is sound, and we think the special charge should not have been given, and that the trial court did not commit error in refusing to give the charge.

We have examined the other questions presented and believe they, too, are without merit, and should be overruled.

The judgment of the Court of Civil Appeals and the judgment of the District Court should be in all things affirmed; and it is so ordered.

*Affirmed.*