## CITY NAT. BANK OF MEXIA v. FIRST NAT. BANK OF WORTHAM et al.
### (No. 821.)

Court of Civil Appeals of Texas. Waco.
June 13, 1929.

Rehearing Denied in Part Sept. 19, 1929.

C. S. Bradley, of Groesbeck, for appellant. W. T. Thomason, of Wortham, and L. W. Shepperd, of Groesbeck, for appellees.

BARCUS, J. The facts in this case are undisputed. On December 24, 1924, appellant bank received a wire from O. E. Caudell of Evansville, Ind., directing it to pay to A. M. Reynolds $285.50 out of $623 that had been delivered to said bank, upon the delivery to it of certain oil leases for Caudell. On December 29th, Dan Dillon, who was known to the cashier of appellant bank, requested appellant to give him a cashier's check for the $285.50, payable to A. M. Reynolds. Said cashier's check was drawn for said amount and made payable to A. M. Reynolds, and same was delivered to Dan Dillon. Dan Dillon took the cashier's check to Wortham and had same indorsed: "A. M. Reynolds, by A. McReynolds." Then he (Dillon) personally indorsed same and presented it to appellee Wortham bank, and same was by said bank paid. The cashier's check, with said indorsements thereon, was sent to appellant bank, which refused payment because it had not been indorsed by A. M. Reynolds. This suit was instituted by the Wortham bank against appellant and A. McReynolds to recover the amount of said cashier's check.

The cause was submitted to the trial court, which rendered judgment in favor of the Wortham bank against appellant bank for the amount of said cashier's check.

In addition to the above facts, it was shown without dispute that at the time the cashier of appellant bank issued the cashier's check, payable to A. M. Reynolds, and delivered same to Dan Dillon, he (the cashier) thought that A. M. Reynolds was the Reynolds connected with the partnership of Cranfill & Reynolds, who were operating in the oil fields at or near Wortham. No person claiming to be A. M. Reynolds ever appeared at appellant bank claiming said fund, and no one connected with the litigation knew any one by that name. No explanation is given in the record as to who was the A. M. Reynolds mentioned in the wire to said bank, or as to whether such a person really existed. The leases called for were never delivered to appellant bank for Caudell. Prior to the trial of this case in 1929, the money had been returned by appellant bank to the party in Indiana who had wired same to it.

The sole question for determination in this case is whether the check was sufficiently indorsed by A. M. Reynolds to require appellant bank to pay same. This calls for the construction of certain portions of the Negotiable Instruments Act (Acts 36th Leg. [1919], c. 123). Appellee contends that since the cashier's check was payable to a fictitious or nonexistent person, it was, under subdivision 3 of section 9 of said act, payable to bearer, and that therefore it was properly indorsed. Whether appellee's contention would be correct if it were an admitted fact that A. M. Reynolds was a fictitious or nonexistent person is not necessary for us to, and we do not, determine. There is nothing in the record to show that he was or is as a matter of fact a fictitious person. The telegram from Indiana was to pay the money to A. M. Reynolds. The check was issued payable to his order, and the cashier of appellant bank at the time

he issued same thought that A. M. Reynolds lived at Wortham and made the check so payable, intending that A. M. Reynolds should indorse the check and receive the proceeds thereof. Said subdivision 3 of section 9 of said act provides, however, specifically, that in order for the instrument to be payable to bearer when issued to a fictitious or nonexisting person, such fact must be known to the person making same so payable at the time he issues the instrument. Appellant contends that since the check was not indorsed by A. M. Reynolds, it was not required to, neither was it authorized to, pay the same, on the theory that no one except the person to whom the check was payable was authorized to collect it unless and until it was indorsed by the payee named in the check. Section 19 of the Negotiable Instruments Act provides that the signature of any party may be made by his duly authorized agent, and provides further that the authority of the agent may be established as in other cases of agency. Section 20 of said act provides that where a person other than the payee in an instrument signs or indorses same for or on behalf of his principal in a representative capacity, he is not liable on the instrument if as a matter of fact he was authorized to sign same. Section 21 of said act provides: "A signature by 'procuration' operates as notice that the agent has but a limited authority to sign, and the principal is bound only in case the agent in so signing acted within the actual limits of his authority." In Clinton v. Hibbs, 202 Ky. 304, 259 S. W. 356, 359, 35 A. L. R. 462, the court, in discussing the question of what was a signature by procuration, stated: "The word 'procuration,' as therein used, and as defined by law lexicographers, means 'the act by which a principal gives power to another to act in his place as he could himself'; and Mr. Anderson, in his law dictionary, defines it as: 'acting as agent for another; agency; proxy.'"

The indorsement on the cashier's check in this case does not purport to be that of A. M. Reynolds. The most that could be claimed for it is that under the provisions of section 21 of the Negotiable Instruments Act, it was an indorsement by procuration. A. McReynolds, who indorsed same for A. M. Reynolds, clearly indicates that he was not indorsing A. M. Reynold's name except as agent. No effort was made by the parties to show that A. McReynolds knew A. M. Reynolds or that he was pretending to or that he had any authority to act for him.

 The courts seem to uniformly hold that where a check is issued to a person that the party issuing same believes is in existence at the time of issuance, same is not payable to bearer, and that same is not collectible until indorsed by the party for whom it was intended, and that if the bank pays such a check without a proper indorsement, it becomes liable to the drawer of the check. This holding is on the theory that before the bank is authorized to pay money on a check that has been issued to a party thought to be in existence by the drawer thereof, it must know that the party to whom it is paying the money is the person that the party who issued the check intended to receive it. Guaranty State Bank & Trust Co. v. Lively, 108 Tex. 393, 194 S. W. 937; Mercantile Nat. Bank v. Silverman, 148 App. Div. 1, 132 N. Y. S. 1017; Simpson v. Denver & Rio Grande Ry. Co., 43 Utah, 105, 134 P. 883, 46 L. R. A. (N. S.) 1164; Robertson, Banking Com., v. Brasfield, 202 Ala. 167, 79 So. 651; American Express Co. v. Peoples' Sav. Bank, 192 Iowa, 366, 181 N. W. 701; First Nat. Bank v. Kelgord, 91 Neb. 178, 135 N. W. 548. The facts in the case of Guaranty State Bank & Trust Co. v. Lively, supra, were very similar to the facts in the instant case. In said case H. Y. Lively, at the request of Joseph Weil, executed his check for $1,500 payable to E. Crawford, and delivered said check to Joseph Weil. At the time the check was issued, Lively thought there was in existence a man by the name of E. Crawford, from whom he had through Joseph Weil purchased and received certain vendor's lien notes calling for $1,500; the check being given in payment for said notes. After the notes were delivered to Lively and he had given his check, payable to E. Crawford, he discovered that the notes were bogus and that the entire transaction had been perpetrated by Joseph Weil as a swindle. In the meantime Joseph Weil had indorsed the check in the name of E. Crawford and collected same from the bank. Lively sued the bank to recover the $1,500 and was successful in said litigation. The Supreme Court, in affirming the judgment, stated: "A check made payable to a fictitious person with the knowledge of the maker is payable to bearer, and a bank which paid the check would be protected in its payment to anyone presenting it. But a check which is made payable to a fictitious person without the knowledge of the maker is not payable to bearer, and it is the duty of the bank before paying it to ascertain the existence and the identity of the payee, and failing to do so, to refuse its payment." The court then copied a long quotation from the case of Armstrong v. National Bank, 46 Ohio St. 512, 22 N. E. 866, 6 L. R. A. 625, 13 Am. St. Rep. 655, by the Supreme Court of Ohio, together with a number of other authorities, and held that the bank, under the conditions stated, was not authorized to pay the check to Joseph Weil, on the indorsement made by him of E. Crawford's name thereon.

 We do not think the indorsement on the check in this case of, "A. M. Reynolds, by A. McReynolds," was sufficient to authorize or require the appellant bank to pay same, and appellee bank having paid said check without a sufficient indorsement, could not hold appellant bank responsible or liable thereon. The trial court was in error in ren-

214

dering judgment against appellant bank in favor of appellee bank.

The judgment of the trial court is reversed, and the cause is remanded.