## WHITAKER v. FIRST NAT. BANK IN HOUSTON.

### No. 10714.

Court of Civil Appeals of Texas. Galveston.

Feb. 23, 1939.

Rehearing Denied March 16, 1939.

Robt. L. Sonfield, of Houston, for appellant.

Edward S. Boyles, V. Lee McMahon, and Willard L. Russell, all of Houston, for appellee.

CODY, Justice.

One H. T. Wick and F. N. Pattee, having conceived the idea of forging a title to a 28-acre tract of land in Wharton County which belonged to a gentleman by the name of Coffey, in the latter part of May, 1936, appeared before a Notary Public of Bexar County, and Pattee forged Mr. Coffey's name to a deed which purported to convey such tract to Marvin G. Ellis. Pattee on that occasion represented himself to be Mr. Coffey, and acknowledged the deed in the name of W. E. Coffey. On the same day, Wick and Pattee appeared before another Notary Public, and Pattee then represented himself to be Marvin G. Ellis, and signed and acknowledged a deed purporting to convey the land to Wick. They caused the deed to be recorded in the deed records of Wharton County. Appellant was introduced to Wick about June 1, 1936. He never met Pattee. He entered into an agreement with Wick to buy the land for the cash consideration of $3575, of which sum $1,025 was to belong to Wick as his profit, and the balance of it, $2,550, was to be paid to Marvin G. Ellis. Of course he did not know there was no such person as Marvin G. Ellis. Wick furnished appellant with an abstract of title certified to down to date; and from an examination of the abstract appellant's attorney found the title good.

Then, on June 5, 1936, Wick and Pattee went to appellee's banking house in Houston and delivered to H. H. Burghard, a collection teller of appellee, a draft dated May 29, 1936, to which was signed the name Marvin G. Ellis, and which was drawn on Wick for $2,550, and payable to the order of Marvin G. Ellis. Attached to this draft was the above mentioned deed, purporting to be a conveyance of the 28-acre tract from Marvin G. Ellis to Wick. Neither Wick nor Pattee were depositors of appellee.

After the title had been passed, appellant went to appellee's banking house with Wick, and told Mr. Burghard, the collection-teller, that he wanted to pay the Marvin G. Ellis Draft for $2,550, and get the deed attached to it. Appellant had with him a cashier's check on the South Texas Commercial National Bank, payable to appellee in the sum of $3,575. He delivered this check to appellee's aforesaid teller, requesting two checks,—one to Marvin G. Ellis for $2,550, and the other to Wick for $1,025. The teller did as requested. The check to Wick was then delivered to him in appellant's presence. And at that time Wick told the teller that he would take the check payable to Marvin G. Ellis and deliver it to him. But appellant at once instructed the teller that he did not want that check delivered to Wick or any person other than Marvin G. Ellis. It appears that the teller had issued a receipt in the name of Marvin G. Ellis and Wick, and on the back of it was the notation that the address of Ellis was 116 Taylor Street, San Antonio, Texas, and appellant instructed the teller to mail the check to Marvin G. Ellis at that address, and the teller agreed to do so.

After appellant left the bank, and while the aforesaid teller was out at lunch, Wick and Pattee went to the collection window and asked for the cashier's check payable to Marvin G. Ellis, and it was delivered to them. Pattee thereafter indorsed on the check the name "Marvin G. Ellis". They found Mr. W. S. Cochran, a vice-president of appellee, in a restaurant, and Wick introduced Pattee to him as Marvin G. Ellis. Wick told Mr. Cochran that Mr. Ellis and he had a check, showing it, and indicating the need for identification, whereupon Mr. Cochran noted on the check "Identified by W. S. Cochran". The check was then cashed by Pattee representing himself to be Marvin G. Ellis, at appellee's bank. After the check had been cashed appellant discovered that the title had been forged, and brought this suit against appellee to recover the $2,550, rep-

resented by the cashier's check for that amount.

After the case was tried, the court dismissed the jury, and rendered judgment for appellee.

In support of the trial court's judgment appellee urges in effect, that "Marvin G. Ellis" was not a fictitious person, but the name adopted by Pattee for effecting the forgery of the title, and that it was the name signed to the draft, and that Pattee was the person to whom appellant wanted the check paid, as he was the person who signed the draft; and for support of this position cites Nebraska Hay & Grain Company v. First National Bank, 78 Neb. 334, 110 N.W. 1019, 9 L.R.A.,N.S., 251, 126 Am.St.Rep. 602.

"Marvin G. Ellis" was the name assumed by Pattee for the joint purpose that he and Wick had of perpetrating the fraud in connection with forging the title to the 28-acre tract of land in Wharton County, in the same sense that he assumed the name of Mr. Coffey, the owner of the land. In order to make it appear that title had been divested out of the true owner—an existing person—it was necessary that Mr. Coffey's name be forged to a deed. Pattee and Wick might have made the forged deed purport to convey the land to an existing person or persons, or they could have made it purport to convey to some unknown and non-existing person. Certainly "Marvin G. Ellis" was no more adopted as the name of Pattee than it was adopted as the name of Wick. It was manifestly adopted because there was no such person. And this case is ruled by Guaranty State Bank & Trust Co. v. Lively, 108 Tex. 393, 194 S.W. 937, L.R.A. 1917E, 673. Without adverting to the facts in that case beyond stating that the scheme to defraud there also involved the use by its perpetrator of the name of a non-existing person, we make this quotation of law therefrom, which is so appropriate that, notwithstanding its length, we feel impelled to adopt: "If the drawer of a check, acting in good faith, makes it payable to a certain person or order, when in fact there is none, no good reason can be perceived why the banker should be excused if he pay the check to a fraudulent holder upon any less precautions than if it had been made payable to a real person; in other words, why he should not be required to use the same precautions in the one case as in the other; that is, determine whether the indorsement is a genuine one or not. The fact that the payee is a non-existing person does not increase the liability of the bank to be deceived by the indorsement. The fact is that an ordinarily prudent banker would be less liable to be deceived into a mistaken payment by a fictitious indorsement such as this was than by a simple forgery. The determination of the character of any indorsement involves the ascertainment of two things: (1) The identity of the indorser; and (2) the genuineness of his signature; and no careful banker would pay upon the faith of the genuineness of any name until he had fully satisfied himself both as to the identity of the person and the genuineness of his signature. Now, a careful banker may be deceived as to the signature of a person with whose identity he may be familiar; but he is less liable to be deceived where both the signature and the person whose signature it purports to be are unknown to him. In making the inquiry required in such case to warrant him in acting, he will either learn that there is no such person, or that no credible information can be obtained as to his existence, which, with an ordinarily prudent banker, would be the same as actual knowledge that there is no such person, and he would withhold payment, as he would have the right to do in such case. But still, if he should be deceived as to the existence of the person, he would nevertheless require to be satisfied as to the genuineness of the signature. Of this, however, he could not be through his skill in such matters, and on which bankers ordinarily rely, for he would be without any standard of comparison, and he could have no knowledge of the handwriting of the supposed person, for there is no such person. So that, if he acts at all, it must be upon the confidence he may place in the knowledge of some other person and if he choose to act upon this, and make, instead of withholding payment, he acts at his peril, and must sustain whatever loss may ensue."

The fact that the check was a cashier's check, drawn at appellant's instruction, payable to a fictitious person, whom he did not know to be fictitious, does not change the rule. The proof shows that the money was paid out upon the identification of Pattee as being "Marvin G. Ellis". Had he made the inquiry required to warrant him in so identifying

Pattee, he would either have learned that there was no such person, or that no credible information could be obtained that Pattee was the non-existing "Marvin G. Ellis". This point was not involved in the Nebraska case, cited above, relied on by appellee, and the Nebraska case is not in point.

The trial court should have rendered judgment for appellant against appellee for the amount of the Marvin G. Ellis check, together with interest thereon from June 5, 1936, the date the money was wrongfully paid out, at the legal rate. The judgment of the trial court is accordingly reversed, and here rendered for appellant.

Reversed and rendered.

On Appellee's Motion for Rehearing.

■ We did not pass on the question of a bank's liability as a collection agency in our original opinion, and it was not in appellee's capacity as a collecting agent that it was adjudged liable. The mere delivery of the cashier's check to Pattee caused no loss. The loss was caused by the notation which was placed thereon by one of appellee's vice-presidents. Until that notation was made on the check, Pattee and Wick would have found it impossible to get the money on it because the primary banking rule which governs the paying out of money on a check is that it shall be paid only to him who is known to the paying teller as the payee (or endorsee) in the check, or who is identified as such. And, of course, anyone who assumes the responsibility of identifying the payee of a check is answerable to the bank if the bank pays out such money to such person, so identified as being the payee named in the check, if he happens not to be such a one as he was mistakenly identified to be. Appellant had the right to trust to this primary banking rule being observed. And had it been observed in this instance, no loss would have occurred, because Pattee could never have been identified as being "Marvin G. Ellis", under the standard which banks must follow, which is quoted in our original opinion. The fact that appellee happened to be connected with the transaction as a collection agent cannot absolve it from liability for the action of its vice-president in having violated such rule.

■ Had the notation not been placed on the check, no paying teller would have paid it out unless or until such proof was forthcoming as would have exposed the fact that there was no such person as "Marvin G. Ellis", and then would have been no loss. Certainly this would be true if paying tellers observed this primary banking rule, and we believe we are authorized to take judicial knowledge that they do. And if some paying teller had violated such rule, and paid out the money on the check to Pattee or Wick on the assumption that he was "Marvin G. Ellis", without requiring proper assurance (which requirement would have exposed the fraud), then such negligence on the part of such paying teller would have rendered his bank liable for the resulting loss as a matter of law under the Lively case. Under the circumstances of this case, and so far as appellee's tellers were concerned, the notation made the check, in effect, payable to bearer.

Appellee's motion for rehearing is overruled.