**GREENVILLE NAT, EXCHANGE BANK et al. v. NUSSBAUM et al.**

No. 2306.

Court of Civil Appeals of Texas. Waco.

Oct. 2, 1941.

Rehearing Denied Oct. 16, 1941.

Lee A. & Allen Clark, of Greenville, Bradley & Bradley, of Groesbeck, and W. W. Mason, of Mexia, for appellants.

Conway & Scharff, of Waco, and Reed & Cannon, of Groesbeck, for appellees.

TIREY, Justice.

Plaintiffs Harold and Claude Nussbaum, independent executors of the estate of

Julius Nussbaum, deceased, brought this suit against Farmers State Bank in Mexia, the Greenville National Exchange Bank of Greenville, and W. A. Beasley of Greenville, to recover the loss occasioned by reason of forged endorsement (by Beasley) of the payee, Sanitary Appliance Co., Inc., on sixty-six checks aggregating $50,559. The case was tried before the court without a jury and resulted in a joint and several judgment against the Mexia Bank, the Greenville Bank, and Beasley, for the sum of $14,218.50, and judgment in favor of the Mexia Bank on its cross-action against the Greenville Bank for a like sum. Both banks have appealed. Owing to the fact that the Mexia Bank "excepted only to that portion of the judgment rendered against it," we have, for convenience, referred to the Greenville Bank as "appellant." None of the parties requested findings of fact and conclusions of law and none were filed.

Appellant's first proposition is: "The undisputed facts in this case show that, in their dealings with Beasley and the banks, plaintiffs were guilty of negligence of the worst character and that such negligence caused, or contributed to cause, the loss they sustained." The point raised requires a comprehensive statement.

■ The Sanitary Appliance Co., Inc., was granted a Texas charter in June, 1923, and was domiciled at Houston, Texas. It was engaged in the business of manufacturing plumbing supplies and selling them to schools and municipalities. It operated as a going concern until July, 1933, at which time its charter was forfeited, but neither the plaintiffs nor the defendant banks knew that said corporation had suspended business or that its charter had been forfeited. Its assets were liquidated without receivership or bankruptcy. It was not dissolved. It still remained a legal entity. Stephens County v. J. N. McCammon, Inc., Tex.Com.App., 40 S.W.2d 67. Beasley had resided in Greenville for many years, and his reputation and integrity in that community were unquestioned. He was a customer of the Greenville Bank, carried an active account there, and had the confidence and respect of said bank. He was employed as a salesman for said Sanitary Appliance Co., Inc., in 1928 or 1929 and continued with the company as such until it went out of business. He first met Julius Nussbaum in 1932 and represented that said company was in the business of building sanitary toilets over the country; that he represented said company; that it had school warrants to sell, and that it desired to discount these warrants. In April of that year Nussbaum purchased through Beasley two school warrants, one issued by the Mexia Independent School District and the other issued by the Shiloh Common School District of Limestone County, each bearing the purported endorsement of said company, for which Nussbaum gave his check in each instance on the Farmers State Bank of Mexia, payable to the order of said company. Thereafter, Nussbaum purchased through Beasley school warrants (which Beasley had forged), purportedly issued by various common school districts in Limestone and other counties, payable to the order of said company, and which endorsements he had forged, for which Nussbaum issued fifteen other checks up to August, 1934, which checks totaled the sum of $3,585.20. Each of these checks was drawn on the Mexia Bank, payable to the order of said company, with the exception of one which was payable to the order of Beasley. Beasley forged the name of the payee on checks payable to the company and then endorsed each check with his signature and collected them through the Greenville Bank. The first two warrants were valid and were collected from the districts which issued them. Each of the others was postdated and was not approved by the county superintendent, as provided in sec. 2, Art. 2827, Vernon's Ann.Civ.Statutes, or otherwise. Julius Nussbaum died testate in January, 1935, and at the time of his death he had been paid for eight warrants, and he had on hand sixteen unpaid warants aggregating $3,409.50. These warrants and all of his canceled checks went into the hands of plaintiffs. Each warrant purchased by Julius Nussbaum was discounted twenty per cent. The record does not show any correspondence between Beasley (or the company) and Julius Nussbaum concerning their transactions, nor does it show whether Julius Nussbaum made any investigation of Beasley or of said company.

In February, 1934, Beasley opened an account in the name of said company with the Greenville Bank. This account began with the deposit of the seventh check issued by Julius Nussbaum in his transac

tions with Beasley, in the sum of $800, payable to the order of said company, drawn on the Mexia Bank. Beasley forged the endorsement of the payee and he then endorsed it with his genuine signature. There is nothing in the record to show whether said check was endorsed prior to the time Beasley brought same to the bank, nor is there any evidence in the record to show that Beasley endorsed it in the bank, or in the presence of any agent of the bank. Said bank required a signature card, and the signature card filed with the bank (prepared by Beasley) had on it the following: "Sanitary Appliance Company, Inc., Address Houston, Texas (Typed) L. M. Jones, Secty-Treas. (Signed) Identified by (Typed) ———. Date 3/10/34 (Typed)." This account continued active until March, 1939 by the deposit of the Nussbaum checks and the withdrawals on checks written by Beasley in accordance with the signature card on file, payable to the Nussbaums or to Beasley. Beasley did not have corporate authority from said company to open said account, nor to give the signature card of the company to the bank, nor did he have corporate authority to endorse the warrants sold by him. The Greenville Bank admitted the following: " * * * that the endorsements of the Sanitary Appliance Company, L. M. Jones, Secty-Treas. appear on each of the Nussbaum checks which were deposited with said bank and cleared through it, and each contained substantially the following words: 'Sanitary Appliance Company, Inc., L. M. Jones, Secty-Treas.' * * * that said purported corporation did not authorize any endorsements upon such checks; * * * that the purported corporation known as the Sanitary Appliance Company, Inc., did not authorize the issuance of the checks made to Nussbaum or any other person against said account; * * * that all of the Nussbaum checks which were cleared through The Greenville National Exchange Bank were so cleared in the usual course of business; * * * that the rubber stamp impression on any Nussbaum check where it appears, contained the words 'All prior endorsements guaranteed' was placed there by an employee of The Greenville National Exchange Bank, who had authority to place it there."

Neither of the plaintiffs had anything to do with his father's affairs during his lifetime. Harold Nussbaum never met Beasley prior to his father's death, but Claude had seen him a few times in his father's office. Beasley called on plaintiffs after their father's death for the purpose of continuing the business relationship that he had carried on with their father. Beasley advised plaintiffs how he had sold these school warrants to their father; that they were endorsed by said company, and that plaintiffs would not have to make collection of the same; that when they became due the warrants would be paid by said company; that plaintiffs would surrender the warrants; and that the transactions would be carried on just as they had been carried on with their father. Plaintiffs subsequently agreed to handle the warrants at a ten per cent discount. Beasley negotiated the sale of all of the warrants to plaintiffs, and they purchased same by issuing their checks on the Mexia Bank, payable to the order of said company. Substantially all of these transactions were handled through the mails. None of the warrants passed · through the defendant banks. Plaintiffs' arrangement with Beasley was that they would notify Beasley for his company at Greenville as to the due dates of the warrants, and that the company would place the money in the Greenville Bank, and that checks for the warrants due would be mailed to plaintiffs at Mexia, regardless of whether the company had collected the money from the school districts; that after plaintiffs received their money on the warrants due, they, in turn, would forward these warrants to the company through Beasley at Greenville. Plaintiffs did not know why Beasley wanted some of the warrants "canceled and marked paid," that so far as they knew all warrants that were taken up between the dates of March 6, 1936, and April 20, 1937, may have been canceled, although in most instances Beasley requested them to return the warrants uncanceled. Neither of the defendant banks had knowledge of these facts. Plaintiffs believed that said company was a corporation, and for that reason made each of the checks in question payable to the order of said corporation, but they made no investigation (except their inquiry of Beasley) as to why it carried an account in a Greenville bank. The Greenville Bank had actual knowledge of the corporate existence of the said company prior to Beasley's trans-

actions with the Nussbaums and it owed the duty to determine the genuineness of the endorsement of the checks in question when Beasley presented them to the bank for payment. See Guaranty State Bank & Trust Co. v. Lively, 108 Tex. 393, 194 S.W. 937, 939, L.R.A.1917E, 673; Armstrong v. Pomeroy National Bank, 46 Ohio St. 512, 513, 22 N.E. 866, 6 L.R.A. 625, 15 Am.St.Rep. 655; National Metropolitan Bank v. Realty Appraisal & Title Co., 60 App.D.C. 86, 47 F.2d 982, points 2–4.

Plaintiffs made no inquiry except of Beasley as to whether the postdated warrants were valid; they relied upon Beasley and the information they had about Beasley's transactions with their father. Harold Nussbaum testified that he asked Beasley why the warrants were not approved by the county superintendents, but he never called on any county superintendent to find out why they were not approved; that the fact that each warrant was dated over into another year did not cause him to make any inquiry of anyone except Beasley. He further testified that he relied on the endorsements on said warrants; "I just assumed that any endorsement of the Sanitary Appliance Company was correct"; that one warrant came to them without an endorsement, which he returned to Beasley on November 23, 1937, at Greenville; that he knew that the unendorsed warrant must go to the company at Houston, and that he had the Houston address of the company in their files. Claude Nussbaum testified that he thought he knew something about the company; that he relied solely on what Beasley told him, and his father's judgment; that he did not get any information from his father as to the company; that he got his information about the company from Beasley, and that he relied on the company when he purchased the warrants; that the reason why he did not know whether the company was solvent or insolvent, whether it was a going concern or not, was because he relied on his father's judgment; that he knew that his father had been buying these warrants through Beasley; that his father's transactions through Beasley had been satisfactory in the past, and he assumed that such transactions would be satisfactory in the future, but defendant banks had no knowledge of these facts.

Plaintiffs, as executors, issued their first check payable to the Sanitary Appliance Co., Inc., on February 2, 1935. Thereafter and up until March 16, 1939, at various and sundry times, they issued forty-nine other checks, payable as aforesaid, in various and sundry amounts, the largest being in the sum of $3,351.60, and the last check, dated March 16, 1939, being in the sum of $2,950.20. The entire fifty checks issued totaled $46,927.80. On the checks given by plaintiffs there was noted upon each, with the exception of eighteen, that same was given in a transaction relating to school warrants. All of the checks issued by the Nussbaums in their transactions with Beasley were on the Mexia Bank and were collected through the Greenville Bank; and after Beasley opened the account for said company with the Greenville Bank these checks were deposited to that account. The total checks issued by the Nussbaums in their transactions with Beasley amounted to $50,559; Beasley made payments to them in the amount of $36,340.50, leaving a net loss of $14,218.50.

In March, 1939, the Nussbaums requested Beasley to furnish to them a financial statement of the company. That statement did not come promptly, and the Nussbaums made inquiry elsewhere and ascertained that the company had been out of business for several years. They purchased no other warrants from Beasley and notified the defendant banks of the fraud.

■ The evidence is undisputed that the Nussbaums and the Greenville Bank were guilty of negligence in their respective dealings with Beasley. Therefore, at the very threshold we are met with the question as to whose negligence proximately caused this loss. The Commission of Appeals, in Fidelity & Deposit Co. of Maryland v. Ft. Worth Nat. Bank, 65 S.W. 2d 276, 278, announced this rule: " * * * a collecting bank which accepts a check on another bank on a forged indorsement acquires no title thereto, and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank as for money had and received, even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery. * * * Of course, the right of the payee or rightful owner to recover on this class of checks from the collecting bank is conditioned on the absence of any fault or laches on his part, and on the absence of a ratification of the forged or unauthorized

indorsement by him." The first part of the quotation states the general rule; the latter part states the exception. We think it clearly appears that the judgment of the trial court must be affirmed, unless the undisputed record brings this cause within the exception stated. The Supreme Court in Southwest Nat. Bank of Dallas v. Underwood, 120 Tex. 83, 36 S.W.2d 141, 143, held: "The depositor's negligence is immaterial unless it is of a kind that directly and proximately affects the conduct of the bank in the performance of its duties. * * * If the bank's officers, before paying forged or altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of these checks, even if the depositor omitted all examination of his account. * * * So that, under either rule, it becomes a question of negligence, whether of the bank or of the depositor, and whose negligence was the proximate cause of the loss." The application of these rules to the facts of this case has given us great concern because of the equities here involved. (The Greenville Bank had handled said collections at a loss.) The question therefore arises, what negligent act or acts on the part of the Nussbaums in dealing with Beasley misled the Greenville Bank and caused it to fail to determine the genuineness of the endorsement of the Sanitary Appliance Co., Inc., the payee, on the Nussbaum checks? The Nussbaums were guilty of negligence in the purchase of the warrants, because they purchased warrants that were incomplete upon their face, in that said warrants had not been approved by the county superintendents, as provided in sec. 2, Art. 2827, Vernon's Ann.Civ.Statutes, although each of said warrants had a blank space provided for the approval of the county superintendent, as well as a blank space provided for the approval of the county auditor, but none was so approved. These facts, however, were not known to the Greenville Bank. The Nussbaums made no investigation whatsoever of Beasley or said company, nor did they make any inquiry of the various school districts that purportedly had issued said warrants, nor of the county superintendents or county auditors' in the counties where said school districts were located, but such failure on the part of the Nussbaums was not known to the Greenville Bank. Plaintiffs relied upon Beasley because of the record that they had of the previous transactions their father had had

with him, and they assumed that the warrants in each instance were genuine, but the Greenville Bank had no knowledge of these facts. Therefore, the negotiations and transactions between the Nussbaums and Beasley could not have misled the Greenville Bank. We think it appears from the record that the Nussbaums negligently dealt with Beasley, but that such negligence, although cumulative, was in nowise connected with Beasley's acts in forging the warrants, nor his acts in forging the endorsements thereon, nor his acts in forging the endorsement of the payee in the checks issued by the Nussbaums in payment of said warrants, nor with the bank's failure to determine the genuineness of the endorsement of the payee in each check. "It is not simply a question of using due care and of offsetting negligence against contributory negligence." American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W. 2d 1034, 1038.

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Texas & P. Ry. Co. v. Guidry, Tex.Civ.App., 9 S.W.2d 284, 285, writ refused, affirmed 280 U.S. 531, 50 S.Ct. 159, 74 L.Ed. 596. "The test as to whether a given act may be deemed the proximate cause of an injury, is simply whether in the light of all the attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the act." Galveston, H. & S. A. Ry. Co. v. Bell, 110 Tex. 104, 216 S.W. 390, 391; Glasscock v. First Nat. Bank of San Angelo, 114 Tex. 207, 266 S.W. 393, 36 A.L.R. 320. "Whether, in any given case, the act charged was negligent, and whether the injury suffered was, within the relation of cause and effect, legally attributable to it, are questions for the jury." Mexican Nat. Ry. Co. v. Mussette, 86 Tex. 708, 26 S.W. 1075, 1080, 24 L.R.A. 642. Can it be said that the Nussbaums, in the light of all the attending circumstances, ought reasonably to have anticipated that Beasley would forge the name of the payee in the check or checks delivered to him, when, under all the circumstances, the Nussbaums did not suspect that the warrants they purchased, nor the endorsements thereon, were forgeries? The trial court did not so

hold. Moreover, it appears from the undisputed evidence that subsequent to the negligence of the Nussbaums in their dealings with Beasley in each purchase of the warrants, two intervening causes of their loss appear: (1) Beasley's acts in forging the endorsement of the payee in each of the checks; and (2) the negligence of the Greenville Bank in guaranteeing the endorsement and collecting each of the checks without determining the genuineness of the endorsement of the payee named therein. "The customer of a bank, like everybody else, should ordinarily be held for no more than the proximate results of his acts of negligence, and should therefore not be liable for the unauthorized, unanticipated, intervening, criminal act of another." See Glasscock v. First Nat. Bank of San Angelo, supra [114 Tex. 207, 266 S.W. 394, 36 A. L.R. 320]. No matter from what angle we look at the facts of this case, we encounter the rule that " * * * negligence of the maker is immaterial unless it is of a kind that directly and proximately affects the conduct of the banker in the performance of his duties; * * * " and "it seems plain that only negligence which is a direct and proximate cause of the payment can be effectual in making such a defense." Jordan Marsh Co. v. Nat. Shawmut Bank, 201 Mass. 397, 87 N.E. 740, 743, 22 L.R.A.,N.S., 250; Murphy v. Metropolitan Nat. Bank, 191 Mass. 159, 77 N.E. 693, 114 Am.St.Rep. 595.

▬▬▬ Did the Nussbaums do anything to lead the bank to believe that they ratified the wrongful conduct of Beasley? We think not. The Nussbaums made no examination nor comparison of the endorsements on the returned checks they had issued in payment of the warrants with the endorsements that appeared on said warrants. However, the testimony is without dispute that the endorsements on the warrants, as well as the endorsements on the checks, were forged by Beasley. If appellees had made such an examination or comparison, it does not follow that Beasley's wrongdoing would have been detected. The Commission of Appeals, in Liberty State Bank v. Guardian Savings & Loan Ass'n, 127 Tex. 311, 94 S.W.2d 133, held: "The duty imposed upon the depositor to examine his pass book and vouchers does not extend to an examination of the signatures of the payees on the returned vouchers, as it is the duty of the bank to determine the genuineness of a payee's indorsement, and the depositor is not expected to know his signature, and the fact that an agent in the employ of the depositor has forged the payee's indorsement does not affect the rule." W. A. Bush, assistant cashier and teller of the Greenville Bank, testified substantially that he, himself, did not make any effort to ascertain the genuineness of the signature of L. M. Jones, secretary-treasurer of said corporation, whose purported signature appeared endorsed on the Nussbaum checks, because the account was opened by a responsible party. "He (referring to Beasley) brought the account in and said that he was going to write checks on it." "Before a defendant bank would become entitled to escape its liability for payment of a forged check it must be shown that the bank itself was free from negligence." Union Tool Co. v. Farmers & Merchants Nat. Bank of Los Angeles, 192 Cal. 40, 218 P. 424, 427, 28 A.L.R. 1417; Leather Mfg. Nat. Bank v. Morgan, 117 U.S. 96, 6 S.Ct. 657, 29 L.Ed. 811. It is true that after Beasley opened said company account with the Greenville Bank that the plaintiffs endorsed the checks payable to them, which Beasley had forged against said account to redeem maturing warrants, but it is also true that six of the Julius Nussbaum checks in question had been issued and collected through the Greenville Bank by Beasley forging the endorsement of said company thereon before he had opened said company account with said bank, and the proceeds thereof had been credited to the individual account of Beasley. Moreover, from 1930 to 1933, school vouchers of the Hunt County School District, payable to the Sanitary Appliance Company, Inc., were presented for payment to the Greenville Bank and same were paid by the Greenville Bank (it being the depository of the Hunt County School District). Each of the aforesaid vouchers bore the correct endorsement of said company, by L. M. Jones, secretary-treasurer. These vouchers had been collected through a Houston bank and the endorsement of the Sanitary Appliance Co., Inc., had been guaranteed. These vouchers then remained on file with the Greenville Bank after payment from a week to a month and were then returned to the bookkeeping department of the Hunt County School District in the

town of Greenville, but were accessible to the Greenville Bank. In 1932 to 1933, during the time when the Hunt County vouchers were coming into the bank for payment with the correct endorsement of said company, there were being presented to said bank for payment by Beasley the checks drawn by Julius Nussbaum on the Mexia Bank, payable to said company and bearing the forged endorsement of said company. The bank, with full knowledge of the correct endorsement of the Sanitary Appliance Co., Inc., paid the checks as and when presented by Beasley without determining the genuineness of the endorsement of the payee named in the checks issued by the Nussbaums and, in addition thereto, placed its stamp of approval on the forged endorsements on said checks by guaranteeing all prior endorsements thereon. First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman, Tex. Com.App., infra. There was evidence to the effect that the difference in the forged endorsements and the correct endorsements could be detected. It is also true that in April, 1934, the cashier of the Greenville Bank (after Beasley had opened said company account in February, 1934) wrote said company at Houston, Texas, to this effect: "We hold one share of your stock as collateral to a debt. We will appreciate your advising us if you will be interested in purchasing this stock and, if so, at what price. We will appreciate very much an offer from you for this stock." This letter was returned to the Greenville Bank with the pencil notation: "Do not know of a buyer at this time." The notation was not signed by anyone but was dated April 14, 1934. As we view the record, there is no evidence whatsoever that the Nussbaums ratified the wrongful conduct of Beasley, or that the Nussbaums' dealings with Beasley in any manner induced or caused the Greenville Bank to fail to determine the genuineness of the endorsement of the payee in the checks issued by the Nussbaums in payment of the warrants. On the contrary, we think the undisputed evidence shows that the Greenville Bank acted and relied upon its own judgment. In the light of the foregoing undisputed record and the rule of law applicable thereto, we are of the opinion that there is neither evidence of ratification nor estoppel in this cause (Coleman Drilling Co. v. First National Bank of Burkburnett, Tex.Civ.App., 252

S.W. 215, writ refused); and that when the rule announced in Liberty State Bank v. Guardian Savings & Loan Association, supra, is applied to the facts of this case, it fixes liability on the banks.

Appellant contends that the Mexia Bank had a complete defense against the Nussbaums' cause of action, and that it failed to present it in good faith, and that therefore it cannot recover over against the Greenville Bank. The basis of this contention is substantially that the Nussbaums own more than two-thirds of the capital stock of the Mexia Bank; that Harold and Claude are both directors; that Harold is president of the bank; and that they are, in effect, suing themselves in an effort to make the Greenville Bank bear the loss caused by their negligent conduct. The Mexia Bank was a corporate entity and its active officers and employees were selected by the Board of Directors, and such officers and employees conducted the affairs of the bank. The evidence is undisputed that the Greenville Bank placed upon the Nussbaum checks "All prior endorsements guaranteed," which endorsement was relied upon by the Mexia Bank acting in good faith in paying said checks. As we view the record, the Mexia Bank had no defense against the Nussbaums' cause of action. Labor Bank & Trust Co. v. Adams, Tex.Civ.App., 23 S.W.2d 814; Farmers State Bank of Merkel v. United States, 5 Cir., 62 F.2d 178. We do think it appears from the record that the attorneys for the Mexia Bank were not in sympathy with the defense asserted by the Greenville Bank, but it does not appear that this in any manner interfered with or hindered the Greenville Bank in presenting its defense to the Nussbaums' cause of action. The general rule is: "The implied contract between the banker and his depositor in regard to the depositor's checks is that the banker will pay them from his deposit to the persons to whom he orders payment to be made. When a definite order is made in the check, the duty of the banker is absolute, as a general rule, to pay only in accordance with the order. If payment is to be made to the order of the person named in the check, and if he orders the payment to be made to another person, it is the duty of the banker to see that the signature of the payee is genuine." See Jordan Marsh Co. v. National Shawmut Bank, supra; Murphy v.

Metropolitan National Bank, supra. "The bank's duty to make charges against the depositor's account only on his authentic order and genuine indorsements is absolute—contractual. It is not simply a question of using due care and of offsetting negligence against contributory negligence. To be available as a defense the negligence of the depositor must be of such nature as to interfere with the bank's performance of its contract, and in effect amount to a representation operating as an estoppel." American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034, 1038, points 4–6. The Mexia Bank wholly failed to determine the genuineness of the endorsement of the payee in the Nussbaum checks, as did the Greenville Bank. Los Angeles Investment Co. v. Home Savings Bank, 180 Cal. 601, 182 P. 293, 5 A.L.R. 1193. The evidence is undisputed that the Nussbaums had nothing to do with the Mexia Bank's failure to discover such forgery by Beasley. On the other hand, the evidence is undisputed that the Mexia Bank paid said checks because the Greenville Bank had guaranteed all prior endorsements. First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman, Tex.Com.App., 299 S.W. 856; Railroad Bldg. Loan & Savings Ass'n v. Bankers' Mortgage Co., 142 Kan. 564, 51 P.2d 61, 102 A.L.R. 140; Life Ins. Co. of Virginia v. Edisto National Bank, 166 S. C. 505, 165 S.E. 178; Washington Mechanics' Savings Bank v. District Title Ins. Co., 62 App.D.C. 194, 65 F.2d 827.

Error is assigned to the action of the trial court in permitting Harold Nussbaum to testify to conversation with his deceased father. We have considered this assignment very carefully and are of the opinion that it does not present error for two reasons: (1) the conversation was wholly immaterial and irrelevant on the controlling issues in the case; and (2) the cause having been tried before the court without a jury, the admission of illegal evidence is not cause for reversal when there is sufficient legal testimony to justify the court's finding. Schleicher v. Markward, 61 Tex. 99, point page 102; Ferguson v. Ferguson, Tex.Com.App., 23 S.W.2d 673.

We have carefully considered each error assigned, and we are of the opinion that reversible error is not presented.

The judgment of the trial court is affirmed.