# NOVEMBER, 1924.

## W. A. GLASSCOCK v. FIRST NATIONAL BANK OF SAN ANGELO.

### No. 3361. Decided November 26, 1924.

### (266 S. W., 393).

**1.—Commercial Paper—Alteration—Raised Check—Negligence—Innocent Purchaser.**

A depositor who drew on the bank a check complete in itself but written in lead pencil and in such form as to be easily altered and raised, is not liable to the bank for its payment thereon of an amount to which the check was raised, without the drawer's knowledge or consent, by its alteration by the payee, though it was found that the drawer was negligent in making it in such form and the bank not negligent in cashing it. (Pp. 212-217).

**2.—Same—Proximate Cause.**

The reasoning of numerous and conflicting decisions in cases on raised checks is considered, and the ruling here that the bank must bear the loss is put on the ground that the crime (forgery) by the payee or holder was not within the contemplation of the negligent drawer as a proximate result of such negligence. (Pp. 212-216).

**3.—Same—Cases Discussed.**

Galveston, H. & S. A. Ry. Co. v. Bell, 110 Texas, 104, (proximate cause); Farmers' & M. Natl. Bank v. Novich, 89 Texas, 383; First Natl. Bank of Newsom v. Walling, 218 S. W., 1080 (altered checks); approved. Lanier v. Clark, 133 S. W., 1094, disapproved. (Pp. 214, 215).

**4.—Uniform Negotiable Instruments Law.**

The Uniform Negotiable Instruments Law (article 6001-6124, 5) although, being subsequently enacted in this State it does not control this case, shows by its correspondence with the rule here followed that the correctness of same is generally recognized, it being made statutory in all but four states. (Pp. 216, 217).

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Tom Green County.

*Wright & Harris* and *L. B. Harris,* for appellant, on appeal, cited: G. C. & S. F. Ry. Co. v. Anderson, 126 S. W., 928; Railway Co. v. McCoy, 90 Texas, 264; Railway Co. v. Wisenor, 66 Texas, 674; Railway Co. v. Woldert Grocery Co., 144 S. W., 1194; Farmers' & M. Natl. Bank v. Novich, 89 Texas, 381, 34 S. W., 914; Lanier v. Clarke, 133 S. W., 1093; 1 R. C. L. Alterations of Instruments, Sec. 70, p. 1036; 3 R. C. L., Banks, Section 173, p. 545; 8 Corpus Juris, Bills and Notes, Section 1014; Exchange Nat'l Bank v. Little Rock Bank, 58 Fed., 140; Receivers v. Kosminski, 3 S. W., 892: Crawford v. West Side Bank, 100 N. Y., 50, 53 Am. Rep., 152; Greenfield Saving Bank v. Stowell, 123 Mass., 196, 25 Am. Rep., 67; Coburn v. Webb, 56 Ind., 96, 26 Am. Rep., 15; Walsh v. Hunt, 52 Pac., 115;

Otis Elevator Co. v. Bank, 124 Pac. 704; Scholfield v. Londesborough, A. C. 514, (1894) 2 Q. B., 536; Imperial Bank v. Bank of Hamilton, A. C. 49, 4 B. R. C. 578, 31 Can. S. C., 344; Smith v. Prosser, 11 Ann. Cases, 191.

In argument on certified question in Supreme Court appellant also cited: 22 R. C. L., Note, Proximate Cause, sec. 21; Knoxville Natl. Bank v. Clarke, 51 Iowa, 264, 33 Am. Rep., 129; National Exch. Bank v. Lester, 194 N. Y., 461, 16 A. & E. Ann. Cases, 770.

The case of Colonial Bank of Australia v. Marshall, 5 A. & E. Annotated Cases, 771, is a decision by the highest court of England, and the facts of that case are identical with this case, and that Court holds that whatever duty a customer may owe to his banker in reference to the drawing of checks, the mere fact that he draws a check with such spaces that a forger can utilize them for the purpose of altering the check by inserting additional words and figures in the statement of the amount for which it is drawn does not of itself constitute a violation of that duty. This decision of the House of Lords follows a long line of English Decisions commencing back in 1700 down to the present day, and which is only broken by the decision in the case of Young v. Grote, 4 Bing., 253, which was decided in 1825. The decision in that case has been severely criticised both by the English Courts and the American Courts. See Smith v. Prosser, 11 Annotated Cases, 191; Imperial Bank v. Bank, Scholfield v. Londesborough, Walsh v. Hunt; all cited above.

In the recent case of Stephenson v. Nelson, 243 S. W., 1069, by the Commission of Appeals, Section A, Judge Galleghar announces the proposition of law contended for by us in this case.

For the convenience of the Court we give below the cases which we believe are directly in point and important to this Court in deciding this case: Bank v. Novich, 89 Texas, 381; Exchange National Bank v. Little Rock Bank, 58 Fed., 140; Greenfield Savings Bank v. Stowell, 25 Amer. Rep., 67; Walsh v. Hunt, 52 Pacific, 115; National Exchange Bank v. Lester, 16 A. & E. Annotated Cases, 770; Colorado Bank v. Marshall, 5 A. & E. Annotated Cases, 771; Knoxville Bank v. Clarke, 33 Amer. Rep., 129; Commercial Bank v. Arden, 197 S. W., 951; Broad Street Bank v. National Bank, 22 A. L. R., page 1124.

*Hill & Hill,* for appellee.

A bank upon which a check is drawn is not bound by memoranda or notations put on the margin of such check by the parties for their convenience and the same does not constitute notice to the bank. 2 Bolles Modern Law of Banking p. 603; State National Bank v.

Dodge, 124 U. S., 346; Duckett v. National Mechanics' Bank, 86 Md., 400, 39 L. R. A., 85.

In a suit between a bank and its customer for the recovery by the latter of money paid out on a check signed by the customer, but altered or raised for a larger amount, it is a complete defense for the bank to prove that the customer was negligent in so drawing the check as to render it susceptible of being easily altered and in such way as to avoid detection; and in such case in order to show liability on the part of the bank, customer must go further and show that the bank was negligent in paying the check. Kelley v. Planters' & Merchants' National Bank, 135 S. W., 1142; Morris v. Beaumont National Bank, 37 Texas Civ. App., 97, 83 S. W., 36; 2 Morse on Banking (5th Ed.), Sec. 430, p. 123; 5 Cyc., p. 544; Vogeli v. First State Bank, 19 L. R. A. (N. S.) 402, 96 Pac., 490; De Feriet v. Bank of America, 23 La. Ann., 310 8 Am. Rep., 597; S. S. Allen Grocery Co. v. Bank of Buchanan County (Mo.) 182 S. W., 777; Otis Elevator Co. v. First National Bank, 124 Pac., 704; East St. Louis Cotton Oil Co. v. Bank of Steele, (Mo.) 205 S. W., 96; Timbell v. Garfield National Bank, 106 N. Y. Supp. 497, 121 App. Div., 870; Trust Company of America v. Conklin, 119 N. Y. Supp., 367, 65 Misc., Rep. 1; S. Weisberger Co. v. Barberton Savings Bank, 84 Ohio St., 21, 95 N. E., 379, 34 L. R. A. (N. S.) 1100; Edelen v. Oakland. Bank of Savings, 178 Pac., 737.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Question certified from the Court of Civil Appeals of the Third Supreme Judicial District of Texas, in an appeal from the County Court of Tom Green County.

The certificate in this case was prepared by the distinguished former Chief Justice of the Austin Court of Civil Appeals, Honorable W. M. Key. It is as follows:

"The above entitled cause is pending in this Court, upon appeal from a judgment in favor of appellee.

"The facts are that on October 12th and on October 13th, 1916, there was on deposit in appellee bank in the name of Mrs. W. A. Glasscock, subject to her check, a sum exceeding $500.00. On October 12th, she directed her son-in-law, M. J. Rose, to draw a check, payable to his order, for $5.00. He drew said check in lead-pencil, and she signed the same. As drawn the check read:

" 'San Angelo, Tex., 9/12, 1916 No. ......

. " 'THE FIRST NATIONAL BANK

" 'Pay to   M. J. Rose                                        or order $5.00

" 'Five                                                Dollars

" 'For ...........................

" ' (Signed) Mrs: W. A. Glasscock.'

"A blank space was left between the words 'Five' and 'Dollars', as above indicated, no line being drawn through said space. The following day Rose presented this check to appellee, and when so presented the figures, '$5.00', had been changed to '$500.00', and the blank space between the words 'Five' and 'Dollars' had been filled in by Rose with lead-pencil, so that the same then read:

" 'San Angelo, Tex., 9/12, 1916 No.......

" 'THE FIRST NATIONAL BANK

| " 'Pay to M. J. Rose | or order $500.00 |
| --- | --- |
| " 'Five Hundred | Dollars |

" 'For Loan Six Months.

" ' (Signed) Mrs. W. A. Glasscock.' "

"The appellee, without any knowledge that the check had been altered, paid Rose on same $500.00, and charged that amount to the account of Mrs. Glasscock. Appellant sued the appellee bank to recover this amount, less $5.00 for which the check was drawn.

"The case was submitted to a jury upon special issues, as follows:

" 'First: You will answer in what amount was the check in question written for, when the same was delivered by Mrs. W. A. Glasscock to M. J. Rose.

" 'Answer: Five Dollars. J. J. Clay, Foreman.

" 'Second: Was the check in controversy in this suit raised to a greater amount after its delivery by Mrs. W. A. Glasscock to M. J. Rose, and if yea, in what amount was it raised?

" 'Answer: Five Hundred Dollars. J. J. Clay, Foreman.

" 'Third: If in any preceding question you have answered that the check in controversy was raised after its delivery by Mrs. W. A. Glasscock to M. J. Rose, and made for a greater amount than the same was when it was so delivered, then you will answer:

" 'Did Mrs. Glasscock, at the time said check was raised, have any knowledge, or did she consent to the raising of said check? You will answer this question yes or no.

" 'Answer: No. J. J. Clay, Foreman.

" 'Fourth: Was Mrs. W. A. Glasscock guilty of negligence in signing her name to the check in the manner it was written and without examining it? Answer yes or no.

" 'Answer: Yes. J. J. Clay, Foreman.

" 'Fifth: Was the defendant guilty of negligence in paying said check. Answer yes or no.

" 'Answer: No. J. J. Clay, Foreman.

" 'Sixth: By negligence as used in the preceding interrogatories is meant a failure to use such care and precaution as a person of ordinary prudence would use under like or similar circumstances. In considering your answer to the above question and in explanation

of the law governing the same, you are charged that under the law defendant bank was not bound to take notice of any memorandum upon the margin of said check and such memorandum would not be notice to the bank.

" 'The burden is on the plaintiff to prove the affirmative of the above issues by a preponderance of evidence, except the 4th issue, and as to said 4th issue the burden is on the defendant to prove the affirmative thereof by a preponderance of evidence.

" 'The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony, but the law you are to receive from the court which is herein given you and be governed thereby.'

"The evidence is sufficient to sustain these answers.

"Upon return of the verdict, each of the parties hereto moved the court for judgment in his favor. Judgment was rendered in favor of appellee.

"Appellant, under proper assignments, presents the proposition that where a completed instrument is signed by a party, and after its delivery a forgery is committed by materially changing the same, the maker of such instrument is not liable thereon to an innocent purchaser for value, though by his negligent manner of executing the same, he has rendered possible such forgery, in such manner as the same would not be detected by a reasonably prudent person in the exercise of ordinary care.

"On the other hand, appellee presents the reverse of this proposition as a counter proposition.

"By reason of the fact that the decisions on this point, in other jurisdictions, and the text writers seem to us to be in irreconcilable conflict; that there is a seeming conflict on the principle involved in the cases of Lanier v. Clarke, 133 S. W., 1093, Kelly v. Planters' & Mchts' Natl. Bank, 135 S. W., 1142, and Morris v. Bank, (37 Texas Civ. App., 97) 83 S. W., 36; that there is, so far as we are aware, no decision on this point by the Supreme Court of Texas; and the fact that the point involved is of great interest to the jurisprudence and the business interests of Texas, we certify to your Honors the following question:

"Where a party draws a check in such form as that it can be changed to read for a larger amount, in such manner as not to excite the suspicion of a reasonably prudent person, and it is, after it has been delivered to the person in whose favor it is drawn, so changed, under circumstances that constitute forgery; and the same, upon presentation to the drawee, is paid, without knowledge on his part of such forgery, and without knowledge of such fact as would put a reasonably prudent person on inquiry as to such forgery, must

the loss fall upon the drawer of such check, or upon the bank paying the same?"

As stated in the certificate, the authorities present diverse answers to the question certified.

The following are the outstanding reasons given for affirming liability against the drawer of a check or other negotiable instrument, in favor of a bona fide holder, for an amount to which it was raised by forgery, which was facilitated by the drawer's negligence with respect to the form of the instrument, viz:

First: That the true proximate cause of the excess payment is not the act of the forger but is the drawer's negligence in issuing paper in such shape that it can be collected as raised without detection through the exercise of ordinary care.

Second: That where one of two innocent persons must suffer injury from the wrong of a third the loss should fall on the person whose act enabled the third party to perpetrate the wrong.

Third: That the negligence of the drawer amounts to an invitation to purchase the altered paper, which estops the drawer to question the title of one who has paid value therefor without knowledge of the alteration or reasonable means to discover same.

Fourth: That each depositor owes to his bank the duty to exercise ordinary care in drawing his checks, and where a breach of such duty results in payment by the bank of a raised check, the loss, as between the depositor and the bank, should fall on the depositor.

Notable English and American cases sustaining the drawer's liability under one or more of the rules above outlined are: Young v. Grote, (1827), 4 Bing., 253, 13 E. C. L., 420; London Joint Stock Bank, Ltd., v. Macmillan, (1918 H. L.), App. Cas., 777, 9 B. R. C., 720; Isnard v. Torres, (1855), 10 La. Ann., 103; Garrard v. Haddan, (1870), 67 Pa. St., 85, 5 Am. Rep., 412, and Yocum v. Smith, (1872), 63 Ill., 321, 14 Am. Rep., 120. In line with these cases is the decision of the Texarkana Court of Civil Appeals in First National Bank of Newsom v. Walling, (1920), 218 S. W., 1080.

English and American cases denying the right of the bona fide holder to recover of the drawer a different amount from that for which a completed instrument was drawn, despite mere negligence of the drawer with respect to the instrument's form, are grounded on the following principles:

First: That the proximate cause of loss on paper raised by forgery and originally drawn with blanks not designed to be filled is not the negligence of the drawer but is the act of the forger.

Second: That the rule visiting the consequences of wrongdoing on him who has enabled another to perpetrate a wrong on an innocent party has no application to one who has done no more than issue a

complete negotiable instrument, without conferring any authority, express or implied, on anyone to alter it.

Third: That the drawer's invitation is to deal with paper executed or authorized by him and not with his paper as altered by forgery, and as to such forged paper he is not estopped by reason of having invited anyone to pay or acquire same.

Fourth: That the customer of a bank, like everybody else, should ordinarily be held for no more than the proximate results of his acts of negligence, and should therefore not be liable for the unauthorized, unanticipated, intervening, criminal act of another.

Among leading cases announcing the principles last set out are: Scholfield v. Londesborough, (1896 H. L.), A. C., 514, 75 L. T. N. S., 254; Colonial Bank v. Marshall, (1906), A. C. 559, 5 A. & E. Ann. Cases, 771; Greenfield Savings Bank v. Stowell, 123 Mass., 196, 25 Am. Rep., 67; Knoxville Nat'l Bank v. Clarke, 51 Iowa, 264, 33 Am. Rep., 129; Exchange Nat'l Bank of Spokane Falls v. Bank of Little Rock, 58 Fed., 140, 22 L. R. A., 686; Nat'l Exchange Bank v. Lester, 194 N. Y., 461, 16 A. & E. Ann. Cases, 770; Broad Street Bank v. National Bank of Goldsboro, (N. C.), 112 S. E., 11, 22 A. L. R., 1124.

We think the sounder principles underlie the cases denying the drawer's liability on a forged instrument which was complete when it left the drawer's hands, though it contained a blank space which made it easier for a forger to raise the instrument.

We see no escape from the conclusion announced by the Circuit Court of Appeals, through Judge Sanborn, in Exchange National Bank of Spokane Falls v. Bank of Little Rock, supra, in the following language:

"When the drawer has issued a draft or note complete in itself, but in such a form as to be easily altered without attracting attention, and it is afterwards fraudulently raised by a third person, without his knowledge or authority, and then bought by an innocent purchaser, it is not his negligence, but the crime of the forger, that is the proximate cause of the loss. Forgery and consequent loss cannot be said to be the natural or probable consequence of issuing a draft inartificially drawn. The presumption is that dealers in commercial paper are honest men, and not forgers, and that such paper will not be changed. It will not do to say that every one whose negligence invites another to commit a crime is liable to a third party for the loss the latter sustains thereby. One who, by carelessly leaving a pile of shavings near his house, invites another to commit the crime of arson that results in the burning of his neighbor's buildings, is not liable to his neighbor for that loss. The farmer who negligently turns his horse into the highway, and thereby invites a thief to steal

it, does not thereby lose title to his horse when an innocent purchaser has bought him of the thief. Nor is there, in our opinion, any sound reason why the liability of the maker of a promissory note or bill of exchange, complete in itself when issued, but subsequently raised without his knowledge or authority, should be measured by the facility with which a third person has committed the crime of forgery upon it, or why he should be held liable for the loss resulting from such a forgery. The altered contract is not his contract. His representation was not that the forged contract was his, but that the original contract was his, and the rule *caveat emptor* makes it the duty of the purchaser when he buys it, and not of the maker, to then see that it is a genuine.''

The Supreme Court of Iowa goes to the heart of the matter in asking: ''But could it be anticipated that such negligence would cause another to commit a crime, and can it be said a person is negligent who does not anticipate and provide against the thousand ways through or by which crime is committed?'' Knoxville Nat'l Bank v. Clarke, 51 Iowa, 264, 33 Am. Rep., 135.

Referring to the rule that one who puts it in the power of another to occasion loss to an innocent party ought to make good the loss, the Iowa Supreme Court says in the case last cited:

''It seems to us such rule can have no application to this class of cases. It has never, we think, been carried to the extent of making one person civilly liable for the crime of another, and, on principle, we think it cannot be. As far as courts have gone in this direction is to make one person civilly liable for the fradulent acts of another, whereby some third person has sustained a loss, the fraud being made possible by the act and conduct or negligence of the person charged.''

It would seem that the drawer's negligence could not be held the proximate cause of the payment of a greater amount than was called for by his completed paper, under the settled rule in Texas, whereby ''the test as to whether a given act may be deemed the proximate cause of an injury is simply whether in the light of all attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the act.'' Galveston H. & S. A. Ry. Co. v. Bell, 110 Texas, 106.

However, the decisions of the courts of civil appeals in Texas are not in harmony, as will appear from contrasting the opinion of the Fort Worth court, through Judge Speer, in Lanier v. Clarke, 133 S. W., 1094, 1095, with the opinion of the Texarkana court, through Judge Levy, in First National Bank of Newsom v. Walling, 218 S. W., 1080.

We think the Supreme Court announced the correct rule in Farmers and Merchants National Bank v. Novich, 89 Texas, 383, 384, 34 S. W., 914, as follows:

"The liability of the maker of a note, when it has been changed without his authority, depends upon the question as to whether or not he has committed it to another person in such form as to imply authority in that person to make the change, and if he has done so, the law holds that he has been negligent in so executing and putting it in circulation, and as a result he must suffer from the acts of the person whom he trusted rather than to throw the loss upon another, who did not trust in the matter to the person who made the alteration. Rainbolt v. Eddy, 34 Iowa, 440; Visher v. Webster, 8 Cal., 109; Vanduzer v. Howe, 21 N. Y., 531. For instance, if the note be executed, leaving a blank for the amount to be filled in or a blank indicating that the note is to be made payable at a particular place or if there be a blank indicating that a rate of interest is to be expressed, then the maker of such note impliedly authorizes the person to whom he intrusts it to fill such blanks so as to make the note complete in form. (See cases cited above).

"But according to the statement made in this case and the form of the note embraced therein, there was neither blank nor words indicating that any rate of interest should be expressed. In such case, the addition of the words as in this note at the end thereof was without any implied authority, and if not in fact authorized rendered the note void in the hands of innocent holders thereof."

There is no inconsistency between this statement and the declaration in the opinion that the endorsers would be liable if by their negligence they had put it within the power of the person to whom they entrusted the note to make it seem what it appeared when acquired by the bona fide holder, if read in the light of the context immediately following and quoted above, under which the negligence referred to is made to depend on implied authority to the person to whom the note was entrusted to alter same.

The opinion in Bank v. Novich, supra, is in accord with the opinion of the United States Supreme Court in Angle v. N. W. Mutual Life Ins. Co., 92 U. S., 330, 23 L. Ed., 556, where the court said:

"Persons dealing with an agent are entitled to the same protection as if dealing with the principal, to the extent that the agent acts within the scope of his authority.

"Pursuant to that rule, it is settled law, that where a party to a negotiable instrument intrusts it to another for use as such, with blanks not filled up, such instrument so delivered carries on its face an implied authority to complete the same by filling up the blanks; but the authority implied from the existence of the blanks would not authorize the person intrusted with the instrument to vary or alter the material terms of the instrument by erasing what is written or printed as part of the same, nor to pervert the scope and meaning

of the same by filling the blanks with stipulations repugnant to what was plainly and clearly expressed in the instrument before it was so delivered.

"By virtue of the implied authority, such a depositary may perfect, in his discretion, what is incomplete, by filling the blanks; but he may not make a new instrument by erasing what is writtten or printed, nor by filling the blanks with stipulations repugnant to the plainly expressed intention of the same as shown by its written "or printed terms. Goodman v. Simonds, 20 How., 361; Bank v. Neal, 22 id., 108."

In the instant case, the payee of the check entirely erased the figures "$5.00" and substituted therefor the figures "$500.00", and then utterly perverted the scope, purpose, and intent of the check by inserting the word "hundred" in the blank after the written word "five". It is quite too plain for argument that he had no implied authority to do anything he did and that what he did was utterly beyond the contemplation of the maker of the check; and we think she cannot be considered bound by his acts under sound rules of the law of agency, negligence, or estoppel.

The justice of the rule to which we adhere appears to have become generally recognized throughout the United States. All the states, save about four, have adopted a substantially uniform negotiable instruments law, whereby it seems that the material alteration of negotiable paper relieves all parties thereto from liability thereon who have not made, authorized or approved the alteration; provided, that a bona fide holder may nevertheless enforce payment of the paper as it stood prior to its alteration. 8 C. J., 45; Commercial Bank v. Arden & Fraley, (Ky.), 197 S. W., 954-956.

Article 6001-124 of the Texas Negotiable Instruments Act provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers.

"But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof *according to its original tenor*".

Article 6001-125 declares that any alteration which changes "the sum payable either for principal or interest" is a material alteration.

Under these articles, a check, drawn in the form of the one in suit and in like circumstances, would impose no liability on the drawer in excess of the amount for which originally written, even to a bona fide holder. The Act embracing these articles was adopted, however, after the check here involved was cashed. We refer to the Acts to show the general sanction in America of what we regard as

the rule based on the sounder of the divergent views entertained by most eminent courts.

We answer that the loss, under the facts certified, must fall on the bank instead of the drawer of the check.