## DAVIS et al. v. UNION SUPPLY CO.

### No. 12983.

United States Court of Appeals
Fifth Circuit.

Dec. 26, 1950.

Chas. C. Crenshaw, J. E. Vickers, and Buck W. McNeil, all of Lubbock, Tex., Ralph W. Malone, Dallas, Tex., for appellants.

F. D. Brown, Geo. W. McCleskey, Lubbock, Tex., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

McCORD, Circuit Judge.

This suit was brought by Union Supply Company, a New Mexico Corporation, against the Country Club of Levelland, Texas, the Levelland State Bank and the First National Bank of Levelland, all Texas corporations, and seeks to recover the proceeds of a check for $5650.22, payable to the order of the plaintiff, Union Supply Company, and drawn by the Country Club of Levelland through the First National Bank.

The complaint alleges, in substance, that the check in question was taken from plaintiff's possession without its knowledge and consent and without negligence on its part, and was endorsed "Union Supply Co., Inc., B. J. Hargroves", after which it was cashed and plaintiff did not receive the proceeds. The check was issued in payment of merchandise sold by plaintiff to the Country Club of Levelland, and plaintiff seeks recovery from the defendants, jointly and severally, for the amount of the check, plus interest and costs.

The Levelland State Bank filed an answer alleging that one Brady J. Childress presented the check in question to it, endorsed as above alleged, and requested that the proceeds thereof be credited to the account of B. J. Hargroves in that bank, which was done; that B. J. Hargroves had been employed by the Union Supply Company for several months prior to March, 1948, had frequently endorsed and cashed checks payable to the Company, and either had actual authority to endorse and cash such checks, or by course of dealing had apparent authority to so act. It further alleged that Bruce B. Nesbitt, one of the vice presidents of the Union Supply Company, knew on March 18, 1948, that the check had been drawn but raised no question in regard to it, and made no claim until after the first of May, 1948, by which time Hargroves had drawn the proceeds of the check out of his account; that plaintiff, the Union Supply Company, could and should have discovered by the exercise of proper care and diligence that it had not received the proceeds of the check long before May 1, 1948, and while the defendant, Levelland State Bank, still had the proceeds or a substantial part thereof on hand to the credit of Hargroves, and could have thereby prevented the loss, or a large share thereof; that the Union Supply Company was negligent in the manner in which it conducted its business, in permitting Hargroves to have access to checks drawn upon it, in permitting him to endorse and cash such checks; and that, had proper diligence been exercised by the Union Supply Company prior to March 18, 1948, the defalcations of Hargroves could and should have been discovered and the loss resulting from the cashing of the check would have been averted.

The First National Bank of Levelland and the Country Club of Levelland also filed answers to the complaint, but both these defendants were later dismissed from the suit, and no complaint or issue is raised in regard to such dismissals.

Levelland State Bank, on motion, was permitted by the court to bring in B. J. Hargroves, Brady J. Childress and Sherman Davis as third party defendants upon alleging, in substance, that prior to the issuance of the check in dispute Hargroves and Childress had entered into a plan or scheme whereby Hargroves would endorse various and sundry checks which had been delivered to Union Supply Company in payment for merchandise, and Childress would either cash such checks or have them cashed, after which the proceeds thereof would be used for their joint benefit, including the $5650.22 check in question. It was further alleged that Sherman Davis had obtained $1300 out of the proceeds of the check, knowing the source of the funds, and under such circumstances as to amount to bad faith on his part, and that Levelland State Bank, in the event it was held liable to reimburse plaintiff for the proceeds of the check, was therefore entitled to recover over and against Sherman Davis for the $1300, with interest and costs. Both Childress and Davis filed answers denying the allegations of the third party complaint.

The case was submitted to a jury on special issues, and the jury found (1) that B. J. Hargroves did not have actual authority to endorse the check; (2) that Union Supply Company was not negligent in failing to discover sooner than it did that the check had been endorsed by B. J. Hargroves; (3) that Sherman Davis collected $1300 from the proceeds of the check under such circumstances as to amount to bad faith, and (4) that B. J. Hargroves and Brady J. Childress knowingly and wilfully entered into a plan or scheme to defraud the bank out of the proceeds of the check in question.

The trial court entered judgment based on the jury's verdict in favor of Union Supply Company, and against the Levelland State Bank, for the sum of $5650.22, with interest and costs of suit. Judgment was also entered on the basis of the third party complaint over and against B. J. Hargroves and Brady J. Childress, jointly and severally, for the same amount, and against Sherman Davis for $1300, with interest and costs, on the condition that if and when same was satisfied that amount should be credited against the judgment over and against Hargroves and Childress.

Motions for new trial by Sherman Davis, Brady Childress, and Levelland State Bank were all overruled by the trial court, and each of these parties defendant has appealed.

The important and material evidence, briefly summarized, reveals that Union Supply Company was engaged in the business of selling hardware, mill supplies and equipment used in and about the drilling of oil wells; that its main place of business was located at Artesia, New Mexico, but it also operated a branch store at Sundown, Texas; that B. J. Hargroves, a kinsman of one of the officers of the Company, worked as a trusted employee in the Sundown branch store and sold much merchandise to customers of the Company, receiving in payment therefor both cash and checks; that while acting in that capacity Hargroves, who was an immature boy about 19 or 20 years of age, became well acquainted with one Brady J. Childress, a bootlegger and professional gambler, and as time passed they became close companions. On several occasions Childress sold liquor to Hargroves and was paid by Hargroves from the proceeds of Union Supply Company checks. Hargroves later fell completely under the influence of Childress and became his partner in certain gambling ventures. They had an arrangement whereby Childress would play poker at gambling parties for Hargroves, using funds from Union Supply Company checks endorsed and cashed by Hargroves, and they would divide the losses or gains equally. After some time the losses of Hargroves mounted, and the money which was passed to Childress by means of Company checks steadily increased in amount.

With reference to the $5,650.22 check in question, the evidence is practically without dispute that Childress went to see Hargroves one day in March, 1948, and told him he planned a trip to Lubbock, Texas, that evening to gamble, and asked Hargroves if he had any money and "wanted in on it". Hargroves told him about the check in dispute and stated that he had a $1300 interest in it. That evening Childress and Hargroves went to Lubbock together to join in a poker game at the home of Sherman Davis, a professional gambler. Childress introduced Hargroves to Davis, and they showed the check to Davis with the request that he cash it for them so they could obtain $1300 with which to gamble. Davis was either unable or unwilling to cash the check, but did agree to advance them the $1300, which they lost in the game, and to hold the check over night as security for the gambling debt. The following day Sherman Davis went to Sundown where he contacted Brady Childress. Childress obtained a personal check from Hargroves for the $1300, after which he and Davis went together to the Levelland State Bank, carrying both the check in question belonging to the Union Supply Company and the personal check from Hargroves. Childress requested Bob Berry, the Cashier of the Levelland State Bank, to cash the $5,650.22 check, and place it to the credit of B. J. Hargroves. This was done without any inquiry or investigation being made as to the authority of Har-

groves to endorse checks for the Union Supply Company, in spite of the fact that neither the Company nor Hargroves had any funds in the Bank and no reliance was placed on the cashing of any prior checks similarly drawn and endorsed. In this connection, the Cashier admitted in his testimony that he was familiar with the reputation of Childress in the community as a professional bootlegger and gambler, but that he nevertheless accepted the large check with Hargroves' endorsement thereon and deposited it to his credit as requested by Childress without any further inquiry or investigation as to the genuineness of the indorsement thereon.[1] Under such circumstances, we conclude the bank must be held liable for the loss resulting from its negligence in accepting the check when same was not properly indorsed. See Western Produce Co., Inc., et al. v. Citizens State Bank, Tex.Civ.App., 113 S.W.2d 951, 953–954; 2 Tex.Jur. p. 414; Glasscock v. First Nat. Bank of San Angelo, 114 Tex. 207, 266 S.W. 393, 36 A.L.R. 320.

■ Sherman Davis testified on cross-examination that on the night of the poker game at his home he observed that the check in question was payable to the Union Supply Company. He admitted that he made no inquiry as to the interest of that Company in the check. Moreover, he was present in the bank when Childress requested the Cashier to deposit the check to the credit of Hargroves. He watched and waited until he saw the check had been placed in Hargroves' personal account, and then immediately presented and cashed the $1300.00 check, knowing that it was being cashed from the proceeds of the Union Supply Company check. This evidence points unerringly to the bad faith of Sherman Davis. Fenner, et al v. American Surety Company of New York, Tex.Civ. App., 156 S.W.2d 279; Peoples National Bank v. Guier, 284 Ky. 702, 145 S.W.2d 1042; Kentucky Rock Asphalt Co. v. Mazza's Adm'r, 264 Ky. 158, 94 S.W.2d 316.

■ We find no merit in the contention of appellant, B. J. Childress, that the evidence fails to connect him in any conspiracy with Hargroves to defraud the bank. This contention is dissipated in the light of the evidence which reveals that after Hargroves had been detected appropriating checks and money of the Union Supply Company to his own use and was fired from its employ, and before the Company had found out about the fraudulent scheme concerning the check in question,

1. Bob Berry, cashier of Levelland State Bank, testified:

"Q. Mr. Berry, did you personally know B. J. Hargroves? A. Yes, sir, no, I didn't either, not at that time I didn't.

"Q. You did not on March 22, 1948, you did not know him? A. No, I didn't.

"Q. And you did not at that time know of any authority that B. J. Hargroves had to cash checks upon the Union Supply Company? A. No, other than he had been working for them for quite some time. * * *

"Q. B. J. Childress is nick-named and is commonly called 'Skeet'? A. Yes.

"Q. You had known him for some time? A. Well—

"Q. (Interrupting) You knew at that time that B. J. Childress was a professional gambler and bootlegger? * * * A. I did not know. In my opinion—

"Q. (Interrupting) You had heard he was a professional gambler and bootlegger? A. I had heard, yes, sir. * * *

"Q. So on March 22, 1948, when this $5650.22 check was delivered to you by Childress for deposit to Hargroves' account, you did not take it, relying upon the fact that other checks endorsed 'Union Supply Company' by 'B. J. Hargroves' had gone through your bank, did you? A. I rely on the knowledge of knowing he had been with them for quite some time and was called the manager of that deal at Sundown, of the store at Sundown.

"Q. And that was all, is that right? A. That was right. * * *

"Q. Did you or not ask Mr. Childress to also sign the check when it was deposited? A. I did not.

"Q. As I understand your testimony, you didn't ask him any questions about it? A. I did not.

"Q. Nor anybody else any questions? A. I did not.

"Q. You had not made any investigation before that time, that is, March 22, 1948, concerning the authority of Hargroves? A. I had no occasion to question it.

"Q. Had you made any investigation? A. I had not."

that Hargroves went to the home of Childress; that he was crying at the time and informed Childress he had lost his position. Nevertheless Childress, knowing full well that Hargroves was guilty of embezzlement, agreed to go to the bank and draw out all the money deposited to the credit of Hargroves except two hundred dollars. With that money he first paid himself what Hargroves owed him and later wired Hargroves a balance of approximately five hundred dollars. That same night Hargroves left town and later joined the army in Alaska, where his deposition in this case was taken. We conclude abundant evidence supports the jury's finding that Childress and Hargroves conspired to defraud the bank out of the proceeds of the check in question. Beland v. U. S., 5 Cir., 100 F.2d 289; Texas Public Utilities Corp. v. Edwards, Tex.Civ.App., 99 S.W.2d 420; Johnston v. Andrade, Tex.Civ.App., 54 S. W.2d 1029.

There was no error in the failure of the trial court to submit the issue of apparent authority to the jury. The charge of the trial court, viewed in its entirety, was fair, and as full as the evidence in the case warranted. Every important and material issue was substantially preserved for the consideration of the jury, and there is substantial evidence to support its verdict.

There is no reversible error in the record, and the judgment is affirmed.