Reversed and Remanded, in Part; Affirmed, in Part; and Memorandum
Opinion filed September 27, 2007








Reversed and
Remanded, in Part; Affirmed, in Part; and Memorandum Opinion filed September 27, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00853-CV

____________

 

E.W. ABILL@ BARRICK ET AL, Appellant

 

V.

 

CRT DISASTER SERVICES, Appellee

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 06-06386

 



 

M E M O R A N D U M    O P I N I O N

Appellant E.W. ABill@ Barrick, d/b/a
Barrick Enterprises and d/b/a Barrick Insurance Agency, (ABarrick@), appeals the
granting of summary judgment in favor of CRT Disaster Services, Inc., (ACRT@).  In two issues
Barrick argues the trial court erred (1) in granting summary judgment in favor
of CRT, and (2) in denying Barrick=s motion for a new
trial.  We affirm, in part, and reverse and remand, in part, for further
proceedings.








Statement of Facts

Suzette Gregory was employed as a bookkeeper by CRT.  As
part of her duties, Ms. Gregory submitted checks to Stephen Grove, president of
CRT, for approval and signing.  Gregory prepared some checks, payable to her,
with large blank areas in both the numeric and text fields of the checks. 
After the checks were signed, Gregory allegedly added additional numbers and
text in the blank areas to make the checks payable for sums greater than that
for which they were originally written.  Gregory took these altered checks to
Barrick Enterprises, a cash checking business, where she converted them into
cash.  Because Gregory was responsible for reconciling CRT=s bank statements,
her thefts remained undetected for over four months.

In total, Gregory altered thirty-five checks.  Grove
discovered the thefts after he received a call from Sterling Bank that a check
could not be drawn on CRT=s account due to insufficient funds.  Grove
inspected the bank statements and discovered that Gregory had been altering the
amounts of her checks.

At the time the thefts were discovered, Barrick=s check cashing
business had cashed seventeen checks presented by Gregory, for a total of
$56,724.  Sterling Bank dishonored several of the checks.  Moreover, Barrick=s bank, Washington
Mutual, debited Barrick=s account, removing monies that had been
deposited from CRT=s account at Sterling Bank, and returning
the deposited monies into CRT=s account for the total of $56,724. 
Criminal charges were filed against Gregory, and she pleaded guilty to fraud. 
CRT agreed to accept restitution of $86,000 from Gregory.  

Barrick brought a lawsuit to enforce the checks, and
claimed that CRT committed negligence, or in the alternative, fraud.  CRT moved
for summary judgment, and the trial court granted the motion on unspecified
grounds.  Barrick brings this appeal.[1]








Standard of Review

CRT=s motion for summary judgment appears to
by a hybrid motion in that it is partly a traditional motion for summary
judgment and partly a no-evidence motion for summary judgment. We review the trial court=s summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  To prevail on a traditional motion for summary judgment, the movant
must establish there is no genuine issue as to any material fact and he is
entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c).  When reviewing a summary judgment, we take as true
all evidence favorable to the nonmovant, indulge every reasonable inference and
resolve any doubts in his favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  A defendant, as movant, is entitled to summary
judgment if he either disproves at least one essential element of each of the
plaintiff=s causes of action or establishes all the elements of an affirmative
defense.  Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  

In reviewing a no‑evidence summary judgment, we
review the record in the light most favorable to the nonmovant.  Wal‑Mart
Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).  A party may
move for summary judgment on the ground that there is no evidence of one or
more essential elements of a claim or defense on which an adverse party would
have the burden of proof at trial.  Tex.
R. Civ. P. 166a(i).  A no‑evidence summary judgment is improperly
granted when the respondent brings forth more than a scintilla of probative
evidence raising a genuine issue of material fact.  Coastal Conduit &
Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. AppCHouston [14th Dist.]
2000, no pet.).  Because the trial court did not specify the grounds for its
ruling, we will affirm if any of the grounds advanced in the motion has merit. Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).








Propriety of the Summary Judgment 

In his first issue, Barrick argues the trial court
improperly granted CRT=s motion for summary judgment.  CRT moved
for summary judgment on the following grounds: (1) Barrick=s common law
claims of negligence and fraud are preempted by the Texas Business and Commerce
Code;[2]
(2) there is no evidence to support Barrick=s common law
claims for negligence or fraud; (3) the checks were altered and, therefore, are
not enforceable by Barrick; and (4) Barrick=s injury was
caused by Gregory, not CRT.  We address grounds one and three together because
both fall under the Code.

Texas Business and Commerce Code

In his original
pleading, Barrick asserted he had a right to enforce the checks due to CRT=s negligence and
fraud.  CRT argues Barrick=s common law negligence and fraud claims
are barred by the Code.  However, the Code preempts only those claims which are
in conflict with its provisions.

While principles
of common law and equity may supplement provisions of the Uniform
Commercial Code, they may not be used to supplant its provisions, or the
purposes and policies those provisions reflect, unless a specific provision of
the Uniform Commercial Code provides otherwise.  In the absence of such a
provision, the Uniform Commercial Code preempts principles of common law and
equity that are inconsistent with either its provisions or its purposes and
policies.








Tex. Bus. & Com. Code Ann. ' 1.103, cmt. 2
(Vernon Supp. 2006) (emphasis added).  Additionally, the Code explicitly states
the principles of law and equity shall supplement its provisions.  Id. ' 1.103(3)(b).[3] 
Thus, the Code coexists with the common law unless there is a conflict,
then the Code preempts the common law.  Barrick=s common law claims
do not conflict with the Code and, therefore, are not barred by the Code.

Barrick pleaded, as a holder in due course, for the
enforcement of the checks.  Tex. Bus.
& Com. Code Ann. ' 3.302 (Vernon 2002).  CRT, in its motion
for summary judgment, raised alteration of the checks by a third party as an
affirmative defense discharging its duty to pay the checks.  Tex. Bus. & Com. Code Ann. ' 3.407(b) (Vernon
2002).  Section 3.407 provides that an Aalteration@ occurs when there
is Aan unauthorized
change in an instrument that purports to modify in any respect the obligation
of the party@ or Aan unauthorized addition of words or
numbers or other change to an incomplete instrument relating to the obligation
of a party.@  Tex. Bus.
& Com. Code Ann. ' 3.407(a).  Such an alteration Adischarges a party
whose obligation is affected by the alteration.@   Tex. Bus. & Com. Code Ann. ' 3.407(b).

Barrick first responds by asserting that the checks were
not altered because a CRT employee, namely, its bookkeeper, made all the
changes about which it presently complains.  However, this argument was not
presented in the trial court and is not properly before us on appeal.








In his second argument, Barrick contends CRT is precluded
from raising the affirmative defense of alteration because it failed to
exercise ordinary care when it issued the checks.  Under section 3.406, AA person whose
failure to exercise ordinary care substantially contributes to an alteration of
an instrument . . . is precluded from asserting the alteration or the forgery
against a person who, in good faith, pays the instrument or takes it for value
or for collection.@  Tex.
Bus. & Com. Code Ann. ' 3.406(a) (Vernon
2002).

It is undisputed
Barrick is a holder in due course.  Upon pleading section 3.406, the burden was
on Barrick to present some evidence showing Grove, as CRT=s president,
substantially contributed to the alteration due to his negligence.  Attached to
CRT=s motion for
summary judgment was a certified copy of the Humble Police Department offense
report.  It is undisputed that Gregory presented checks to Grove, which
contained large blanks in front of the words and numbers.  Grove admits in his
affidavit that the numbers and words were written before he signed the checks,
and that before cashing them, Gregory altered the checks by adding words and
numbers to increase the amount.  This constitutes some evidence that Grove and
CRT substantially contributed to the alteration of the checks.  In fact,
Comment 3 of section 3.406 demonstrates the Code anticipated the exact type of
situation presented here.  Comment 3 states, in pertinent part:

3. The following cases illustrate the kind of
conduct that can be the basis of a preclusion under Section 3‑406(a):

. . . 

Case #3.   A company writes a check for $10.  The
figure A10@ and the word Aten@ are typewritten in the appropriate
spaces on the check form.  A large blank space is left after the figure and the
word.  The payee of the check, using a typewriter with a typeface similar to
that used on the check, writes the word Athousand@ after the word Aten@ and a comma and three zeros after the figure A10.@  The drawee bank in good faith pays $10,000 when
the check is presented for payment and debits the account of the drawer in that
amount.  The trier of fact could find that the drawer failed to exercise
ordinary care in writing the check and that the failure substantially
contributed to the alteration.  In that case the drawer is precluded from
asserting the alteration against the drawee if the check was paid in good
faith.








Tex. Bus. & Com. Code Ann. ' 3.406 cmt. 3.

Moreover, Grove admitted he never looked at the bank
statements, allowing Gregory to be the only person responsible for the
checkbook and the reconciliation of the bank statements.  Courts have found
this act alone constitutes negligence by the employer that substantially
contributes to the alteration and, therefore, section 3.406 precludes the
employer from asserting alteration as a defense.  Burns & Parks Painting
Co. v. Bank One, 1996 WL 200947, at *4 (Tex. App.CDallas Apr. 26,
1996, writ denied) (not designated for publication).  Where the maker so
negligently draws the instrument that his negligence facilitates the material
alteration, the rule of estoppel by negligence is imposed to enforce the
payment of the checks in their altered form.  Commercial Credit Corp. v.
Bryant, 490 S.W.2d 644, 648 (Tex. Civ. App.CAmarillo 1973, no
writ).  Thus, Barrick presented some evidence to show CRT was precluded from
asserting alteration as a defense to the enforcement of the checks and he is
entitled to payment of the checks in the altered form.  

Negligence

Barrick presented
a common law claim for negligence.  CRT argues there is no evidence to support
this claim with respect to the element of duty.  However, CRT undoubtedly had a
duty to subsequent holders of Gregory=s checks:

By issuing the
instrument and Asetting it afloat upon a sea of strangers@ the maker or
drawer voluntarily enters into a relation with later holders which justifies
imposition of a duty of care.  In this respect an instrument so negligently
drawn as to facilitate alteration does not differ in principle from an
instrument containing blanks which may be filled.








Tex. Bus. & Com. Code Ann. ' 3.406 cmt. 1. 
The summary judgment evidence shows Gregory prepared checks that contained
significant empty space both in the numeric and text areas of the checks so as
to make them easier to alter after they were signed by Grove.  Whether Grove=s signing of
checks with large blank spaces Asubstantially contributed@ to Gregory=s subsequent
alteration is a fact issue for the trier-of-fact.  Thus, it was not appropriate
for this issue to be decided by summary judgment.

CRT contends it is not liable for the criminal conduct of
its employee.  Indeed, the act of a third person in committing an intentional
tort or crime is generally a superseding cause of harm to another.  Restatement (Second) of Torts ' 448 (1965). 
However, if the likelihood that a third person may act in a particular manner
is the hazard or one of the hazards that makes the actor negligent, such an act
whether innocent, negligent, intentionally tortious, or criminal does not
prevent the actor from being liable for harm caused thereby.  Restatement (Second) of Torts ' 449 (1965). 

CRT looks to Glasscock v. First Natl. Bank, 114 Tex.
207, 266 S.W. 393, 395B96 (1924) to support its contention that
it is not liable for the criminal acts of Gregory.  However, this 1924 case was
decided well before the adoption of the Code.  As stated above, the Code
preempts the common law when there is a conflict.  Tex. Bus. & Com. Code Ann. ' 1.103.  Moreover,
under the Code, it is the employer=s duty to detect
checks altered by its employees.  Tex.
Bus. & Com. Code Ann. ' 3.405 (Vernon
2002); Sw. Bank v. Info. Support Concepts, Inc., 149 S.W.3d 104, 108B09 (Tex. 2004). 
The Code concludes the drawer/employer would be in the best position to detect
any alteration or forgery, A>based on the
belief that the employer is in a far better position to avoid the loss by care
in choosing employees, in supervising them, and in adopting other measures to
prevent . . . fraud in the issuance of instruments in the name of the employer.=@  Sw. Bank,
149 S.W.3d at 108 (quoting Tex. Bus.
& Com. Code Ann. ' 3.405 cmt. 1)








While there may have been a time in our nation=s history when
theft by a trusted employee was not foreseeable, such is not the case today. 
Over thirty percent of current business failures are directly due to employee
theft[4]. 
In fact, studies have estimated that employee theft costs companies $15‑25
billion a year.[5] 
It is not necessary that the conduct should be negligent solely because of its
tendency to afford an opportunity for a third person to commit the crime.  It
is enough that the actor should have realized the likelihood that his conduct
would create a temptation which would be likely to lead to its commission.  Restatement (Second) of Torts ' 448 cmt. c
(1965). Thus, a fact issue was raised as to whether Grove=s conduct may have
been negligent because he should have recognized that it would expose another
to an unreasonable risk of criminal activity.

Fraud

Barrick also sought recovery on an alternative claim of
fraud.  At common law, the term "fraud" means an act, omission, or
concealment in breach of a legal duty, trust, or confidence justly imposed when
the breach causes injury to another or the taking of an undue and
unconscientious advantage.  Flanary v. Mills, 150 S.W.3d 785, 795 (Tex.
App.CAustin 2004, pet.
denied). Thus, to recover on a claim of fraud, a plaintiff must show: (1) a
material misrepresentation was made; (2) the representation was false; (3) when
the representation was made the speaker knew it was false or made it recklessly
without any knowledge of the truth and as a positive assertion; (4) the speaker
made the representation intending that the other party act upon it; (5) the
party acted in reliance on the representation; and (6) the party thereby
suffered injury.  Formosa Plastics Corp. USA v. Presidio Eng=rs &
Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998).  Gregory undoubtedly
defrauded Barrick when she presented the altered checks to him to be cashed.








However, Barrick contends CRT is vicariously liable for the
acts of its agent.  An Aagent@ is any person or
entity who (1) is authorized to act for another and (2) is subject to the
control of the other.  Gonzales v. American Title Co. of Houston, 104
S.W.3d 588, 593 (Tex. App.CHouston [1st Dist.] 2003, pet. denied). 
There is no question Gregory was an agent of CRT.  In addressing whether an
employer can be held liable for the acts of its employee, we must go beyond the
question of whether the employee was acting within the scope of her general
authority.  We must also examine whether the employee=s conduct occurred
in furtherance of the employer=s business, and for the accomplishment of
the object for which the employee was employed.  Minyard Food Stores, Inc.
v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002); Zarzana v. Ashley,
218 S.W.3d 152, 159 (Tex. App.CHouston [14th Dist.] 2007, pet.
stricken).  

An employer is liable for an employee=s tort only when
the tortious act falls within the scope of the employee=s general
authority in furtherance of the employer=s business and for
the accomplishment of the object for which the employee was hired.  Minyard,
80 S.W.3d at 577.  If an employee deviates from the performance of his duties
for his own purposes, the employer is not responsible for what occurs during
that deviation.  Goodyear Tire and Rubber Co. v. Mayes, ___ S.W.3d ___,
2007 WL 1713400, at *3, 50 Tex. Sup. Ct. J. 886, (Tex. June 15, 2007).  In this
case, although Gregory was acting within the scope of her general authority in
that she was writing checks, she deviated from the performance of her duties by
altering those checks to embezzle from  CRT.  When Gregory devised a plan to
alter checks in order to embezzle money from her employer, she was not acting
in the furtherance of her employer=s business.  AIt is
inconceivable that an employee could plan and execute a fraud upon his employer
and be in the furtherance of his employment.@  ITT Consumer
Fin. Corp. v. Tovar, 932 S.W.2d 147, 158 (Tex. App.CEl Paso 1996, writ
denied) (quoting Saenz v. Family Sec. Ins. Co. of Am., 786 S.W.2d 110,
111 (Tex. App.CSan Antonio 1990, no writ)).

Because Gregory was not acting in furtherance of CRT=s business when
she embezzled money from her employer, her employer cannot be held vicariously
liable for her actions.  Thus, Barrick failed to raise a fact issue with regard
to CRT=s vicarious
liability for fraud arising from the acts of its employee, Suzette Gregory.  

 








Unjust Enrichment

Additionally, Barrick argues that because CRT received
restitution of $86,000 for $56,724 in checks that went through Barrick=s check-cashing
service, CRT has been unjustly enriched.  However, Barrick did not plead unjust
enrichment in the trial court.  He raised it for the first time in his response
to the motion for summary judgment.  In the summary judgment context, pleadings
set the limits on which the trial court may grant relief.  Lampasas v.
Spring Ctr., Inc., 988 S.W.2d 428, 436 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  Because the issue of unjust enrichment was not raised in
Barrick=s petition, it was
not before the trial court and is not properly before this court.

Motion For New Trial

In his second issue, Barrick argues the trial court erred
in its denial of his motion for a new trial.  The resolution of a motion for
new trial is left up to the trial court=s discretion.  Strackbein
v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984).  The trial court=s denial of such a
motion is not to be disturbed on appeal unless there is an abuse of that
discretion.  Id.  Because we sustain Barrick=s issue concerning
the trial court=s granting of summary judgment pertaining
to his negligence claims, we find the trial court abused its discretion in
denying Barrick=s motion for a new trial concerning those
claims.  

Accordingly, the judgment of the trial court is affirmed,
in part, and reversed in part, and the cause is remanded for further
proceedings consistent with this opinion.

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed September 27, 2007.

Panel consists of
Chief Justice Hedges and Justices Hudson and Guzman.









[1]  CRT urges we dismiss this appeal for Barrick=s failure to cite to the record.  However, Barrick=s brief, while perhaps not as detailed and organized
as others, cites to relevant portions of the record, statutes, and case law,
which are sufficient to entertain this appeal.  Tex. R. App. P. 38.9.





[2]  Hereinafter referred to as Athe Code.@





[3]  Section 1.103 states in its entirety:

(a) This
title must be liberally construed and applied to promote its underlying
purposes and policies, which are:

(1) to simplify, clarify and modernize the law governing commercial
transactions;

(2) to
permit the continued expansion of commercial practices through custom, usage
and agreement of the parties; and

(3) to make uniform the law among the various jurisdictions.

(b) Unless
displaced by the particular provisions of this title, the principles of law and
equity, including the law merchant and the law relative to capacity to
contract, principal and agent, estoppel, fraud, misrepresentation, duress,
coercion, mistake, bankruptcy, or other validating or invalidating cause shall
supplement its provisions.

Tex. Bus. & Com. Code
Ann. '
1.103.





[4]  Michael D. Mayfield, Revisiting Expungement:
Concealing Information in the Information Age,  Utah L. Rev. 1057, 1070 (1997).





[5]  Larry R. Seegull & Emily J. Caputo, When a
Test Turns Into a Trial, Bus. L.
Today 13, 14 (2006).