Reversed and Rendered and Majority Opinion filed January 29, 2009








Reversed
and Rendered and Majority Opinion filed January 29, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00297-CV

_______________

 

UNIVERSAL UNDERWRITERS GROUP, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 208th District Court


Harris County, Texas

Trial Court Cause No. 1089989

                                                                                                                                               


 

M A J O R I T Y   O P I N I O N

The owner
of a vehicle appeals the trial court=s order transferring title to the
vehicle to the Harris County District Attorney=s Office.  The trial court took this
action based on a novel legal theory advanced by the State under article 47.01a
of the Texas Code of Criminal Procedure.  We conclude that this legal theory
lacks merit under the plain language of the statute.  We reverse and render
judgment that the owner is awarded possession of the vehicle without
conditions.








                               I. Factual and
Procedural Background

On
September 14, 2004, Charles Wallace Lovings, a nineteen-year-old male, entered
Helfman Dodge (AHelfman@), a car dealership, posing as Phyllis Brocato, a forty-six
year old female.  Lovings was dressed in drag when he approached a Helfman
salesman.  He presented a driver=s license containing Brocato=s personal information.  Apparently,
Lovings had removed Brocato=s photograph and substituted his own image.  Helfman=s salesman obtained two credit
reports on Brocato.  Each report prominently stated AInitial Fraud Victim,@ indicating that Brocato previously
had been the victim of fraud.  Further, one report indicated that Brocato
desired to be contacted before credit was extended in her name.  Nonetheless,
Helfman began making arrangements to sell the vehicle.  JP Morgan Chase, a
third-party lender, agreed to finance the transaction provided that Helfman
verified the AID Bureau Fraud Alert@ and obtained a copy of a government-issued identification
card.  The salesman copied the buyer=s identification cards, but no one
from Helfman ever contacted Brocato.  Ultimately, JP Morgan Chase extended
credit, and Helfman sold a 2006 Chrysler 300, VIN 2C3KA43R96H376552 (Athe vehicle@) to Lovings.

The
Houston police arrested Lovings four days later when he attempted to use the
same false identification to obtain credit at a different automobile
dealership.  On January 31, 2007, Lovings pleaded Aguilty@ to making false statements to obtain
credit, and the trial court assessed punishment at four years= confinement.

Following
Lovings=s arrest, the vehicle was towed to a
private storage lot.  Subsequently, members of Lovings=s family submitted an affidavit of
ownership and took possession of the vehicle.  Approximately one month later,
the vehicle was impounded by the Houston Police Department.








After
discovering Lovings=s fraud, Helfman paid the lender the total amount due under
the finance agreement and secured legal title to the vehicle.  After the Harris
County District Attorney=s Office refused requests by Helfman for the return of its
vehicle, Helfman filed a claim for indemnification with its insurance carrier,
appellant Universal Underwriters Group (AUniversal@).  Universal paid Helfman=s claim and thus obtained legal title
to the vehicle. 

The
State later filed a APetition for  Disposition of Stolen Property,@ in which the State sought a hearing
under article 47.01a of the Texas Code of Criminal Procedure so that the  trial
court could determine which person has the superior right to possession of the
vehicle, which the petition indicated might be the Harris County District
Attorney=s Office.[1] 
Universal claimed it had the superior right to possession because it had paid
Helfman=s insurance claim for loss of the
vehicle and because it had title to the vehicle.  The State agreed that
Universal held title to the vehicle, but the State argued that title is not
dispositive of ownership.  Relying on the definition of Aowner@ in the Texas Penal Code, the State
asserted what it described as a Avery novel@ legal theory.  Under this theory, if
Helfman=s alleged gross negligence made it
easier for Lovings to unlawfully appropriate the vehicle, then Helfman forfeits
its superior right to possess the property vis-à-vis the district attorney=s office that prosecuted Lovings.[2] 
Following a hearing, the trial court accepted this legal theory, found that the
Harris County District Attorney=s Office has the superior right to possession of the vehicle,
and ordered that title to the vehicle be transferred to the Harris County
District Attorney=s Office.  In this appeal, Universal challenges the trial
court=s order.

II. Issue and Analysis








In its
second issue, Universal asserts that the trial court erred as a matter of law
in finding that the Harris County District Attorney=s Office has the superior right to
possession of the vehicle and in ordering that title to the vehicle be
transferred to the Harris County District Attorney=s Office.[3] 
Under article 47.01a, the State may petition the district court to hold a
hearing to determine who has the superior right to possession of the vehicle.  See Tex. Code Crim. Proc. Ann. art. 47.01a
(Vernon 2006).  The State did so in this case.  At the hearing, the State
relied on the definition of Aowner@ in the Texas Penal Code.  See Tex. Penal Code Ann. ' 1.07(a)(35) (Vernon Supp. 2008). 
Based on this definition, the State argued that the Harris County District
Attorney has the superior right to possession of the vehicle under the
following legal theory:

If (1) a property owner engages in grossly negligent,
noncriminal conduct that makes it easier for someone to unlawfully appropriate
the owner=s property, (2) the Houston Police Department seizes that property as
part of its investigation of the unlawful appropriation of the property, and
(3) the Harris County District Attorney prosecutes the person who unlawfully
appropriated the owner=s property, then the Harris County District Attorney has the
superior right to possess the property under article 47.01a of the Texas Code
of Criminal Procedure, and the property owner has forfeited its title to the
property to the Harris County District Attorney=s Office.

The trial court accepted
this legal theory, acknowledging that it was Aa very novel concept.@ 

Though
Universal presented undisputed evidence that it holds title to the vehicle, the
State asserts that title is not dispositive and instead points to the
definition of Aowner@ in the Texas Penal Code.  See Tex.
Penal Code Ann. ' 1.07(a)(35).  In this context, the State=s reliance on the Penal Code is
misplaced.  Under the unambiguous language of the Penal Code, this definition
of Aowner@ applies to the Penal Code, not to
the Code of Criminal Procedure.  See id. ' 1.07(a).  Therefore, the State=s Penal Code argument lacks merit. 
Moreover, under article 47.01a, the trial court determines Asuperior right to possession,@ rather than ownership. 








The
State also cites the definition of Aowner@ in Chapter 502 of the Texas
Transportation Code.  See Tex.
Transp. Code. Ann. ' 502.001(16) (Vernon 2007).  Again, under article 47.01a, the
trial court determines Asuperior right to possession,@ rather than ownership.  In addition,
this definition of Aowner@ applies to Chapter 502 of the Texas Transportation Code,
which requires the owner of a motor vehicle to apply for registration of the
vehicle if it is used or to be used on a public highway.  See id.
' 502.002.  Because this case does not
involve any issue regarding the registration of vehicles, this definition does
not apply.  

The
State concedes that a property owner still would have the Asuperior right to possession@ of its property vis-à-vis a district
attorney=s office, even if the owner=s negligence facilitated the unlawful
appropriation of the property.  However, the State asserts that, if a property
owner engages in grossly negligent conduct that makes it easier for someone to
unlawfully appropriate the property, then the district attorney=s office has the Asuperior right to possession@ of the property under article 47.01a
if (a) the police department seizes that property as part of its investigation
of the unlawful appropriation of the property, and (b) the district attorney
prosecutes the person who unlawfully appropriated the owner=s property.  The State cites no
statute, case, or other legal authority that articulates such a rule.[4] 
No court has ever recognized or even alluded to such a rule.  








Because
the Code of Criminal Procedure does not define Asuperior right to possession,@ these words must be given their
common meaning.  See Tex. Code
Crim. Proc. Ann. art. 3.01 (Vernon 2005).  Under this standard,
Universal, the title holder, has the Asuperior right to possession@ over one who holds no title to the
vehicle.  Looking to the plain meaning of the operative statutory language,
even if a property owner engages in grossly negligent, noncriminal conduct that
makes it easier for a person to unlawfully appropriate the owner=s property, the owner does not
thereby lose its superior right to possession of the property upon recovery of
it following the crime.  Though Helfman=s conduct may have been
objectionable, inappropriate, negligent, or even grossly negligent, under the
plain and common meaning of article 47.01a, the State does not have the superior
right to possession of the vehicle.  

The
State=s legal theory lacks merit.  A
property owner=s gross negligence that facilitates the criminal misappropriation of the
property does not result in forfeiture of the owner=s superior right to possess the
property vis-à-vis the police department that investigated the crime or the
district attorney=s office that prosecuted the crime.  The trial court erred as
a matter of law by accepting this theory.  Universal is entitled to possession
of its property.  For these reasons, we sustain Universal=s second issue, reverse the trial
court=s order, and render judgment that
Universal is awarded possession of the vehicle, without conditions.[5]


 

/s/        Kem Thompson Frost

Justice

 

Panel
consists of Justices Frost, Seymore, and Guzman. (Seymore, J., concurring
without opinion).

 









[1]  This was not a forfeiture proceeding under article
59.02 of the Texas Code of Criminal Procedure.  See Tex. Code Crim. Proc. Ann. art. 59.02
(Vernon 2006).   





[2]  Because Universal stands in the shoes of Helfman as
its assignee and subrogee, this theory, if correct, would also result in
forfeiture of Universal=s superior right to possess the property.





[3]  In its first issue, Universal asserts that the trial
court proceedings were Aunnecessary and improperly instigated by the State.@ In its third issue, Universal argues that the trial
court=s order granting unconditional ownership to the State
violates the United States and Texas Constitutions.





[4]  The cases cited by the State do not articulate this
rule.  See National Safe Deposit Sav. & Trust Co. v. Hibbs, 229 U.S.
391, 396 (1913) (holding that bank was equitably estopped from recovering
against stock broker for conversion of stock certificates that were assigned in
blank and that broker had sold for a bank employee who misappropriated the
stock certificates from the bank); Glasscock v. First Nat=l Bank of San Angelo, 266 S.W. 393, 395 (Tex. 1924) (holding that drawer of check is liable
only for the amount originally stated by drawer on check, even though the
drawer=s negligence facilitated the wrongful alteration of
the amount on the check and the payment of a larger amount to the payee); Foust
v. Old Am. County Mut. Fire Ins. Co., 977 S.W.2d 783, 788 (Tex. App.CFort Worth 1998, no pet.) (stating that a buyer who
tenders part payment and takes possession of a vehicle becomes the owner of
that vehicle within the meaning of an insurance policy covering the vehicle); Lockwood
Nat=l Bank v. T.W. Jennings, 381 S.W.2d 682, 683 (Tex. Civ. App.CHouston 1964, writ ref=d n.r.e.) (same holding as Glasscock); Credit Ins. Corp. v.
Pacific Fin. Corp., 329 S.W.2d 945, 946 (Tex. Civ. App.CWaco 1959, writ ref=d)
(holding that one finance company did not perfect its lien in the mobile home
in question and that second finance company, which financed purchase of the
home by a bona fide purchaser for value, did perfect its lien).





[5]  Because Universal seeks the same relief under all
three issues, this court need not and does not address Universal=s first or third issues.